MARCUS CONANT, APPELLANT, VS. AUGUST BUESING, AP-
PELLEE.

1. Equity will set aside a deed to land, regular in form but void in fact,
as against the valid title of one in possession, where the claimant
under the deed insists that it is good, but refrains from suit to
test the title. This is done under the rule for removal of a cloud
upon title, the true owner having no remedy at law.

2. A sale of land for taxes which have been paid by the owner is illegal,
and a deed in pursusnce of such sale is void.

3. C. owned a lot of land which he sold to H. in January, 1877. The
land was assessed to C. for the taxes of that year. H. paid the
taxes, but the Collector sold the land notwithstanding, and a deed
in regular course under such sale was made to Co. : *Held,* That
the deed is void.

4. B. has valid title to a small parcel of land, on which there is no house
or enclosure. H. under B. cuts wood and works round orange
trees on the land : *Held,* That under our statute, and in the

absence of assertion of possession in any one else, B. has possession sufficient to maintain suit to remove a cloud upon his title.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*Geo. Wheaton Deans* for Appellant.

*A. W. Cockrell & Son* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court:

In this case the complainant, who is appellee here, claims title to a certain lot of land in Duval county, which is also claimed by appellant, and the suit was brought by complainant to have the cloud created by the latter claim removed from his title.

The principal allegations as to complainant's title are, that on the 29th day of January, 1877, S. W. Clinton was seized and possessed of certain lots of land in Duval county, and on that day sold and conveyed one of the lots to S. Huntley, who went into possession at once, and remained in possession till the 25th day of January, 1885, when he sold and conveyed said lot to complainant; that thereupon complainant took possession and is still in possession; that said lot was assessed for the tax year 1877 to Clinton; that it was assessed with another, and Huntley paid the whole amount of the tax on both; that notwithstanding such payment the Tax Collector sold the lot for non-payment of taxes, and the certificate of sale was issued to the State in the name of the Comptroller. It is also alleged that the assessment roll did not have either the certificate or warrant of the Assessor required by law. Huntley continued to pay taxes till 1884. On the 11th of March of that year the defendant, Conant, had the certificate of tax sale assigned to him by the Comp-

troller, and on the 25th day of June thereafter procured a deed from the County Clerk on said certificate for the lot. But he has forborne to sue complainant, or otherwise bring to the test the sufficiency of his tax deed, and that said deed creates a cloud on the title of complainant.

The prayer of the bill is to have the tax deed declared irregular, null and void, and the cloud created thereby on complainant's title removed.

The answer admits that Clinton had possession of the lot, as alleged, but says defendant knows nothing of the other matters stated in regard to sales and changes of possession, and leaves plaintiff to prove same; also admits that the lot in question was assessed to Clinton in 1877, but says that at the time of such assessment the said Clinton appeared to be the owner of record, and denies that Huntley paid the taxes on the lot for that year; also admits the sale of the lot for the taxes of that year, but denies the allegation that the certificate of the Assessor was not duly annexed to the assessment roll; also admits the purchase by him from the Comptroller of the Collector's certificate of sale of the lot, and the procuring of a tax deed from the County Clerk for the same, and that he has not brought suit to recover the land; but denies that the tax deed creates any cloud upon complainant's assumed title, or that complainant has any title, and claims that the title is in him. He submits that there is no equity in the bill, and claims benefit of this defect as if he had demured.

Replication was filed, testimony taken by a master, hearing had on the pleadings and evidence, and a decree rendered in favor of the complainant. The defendant appealed and assigns for error, " the making of the decree, as appears of record."

The complainant is entitled to the relief sought, if his
37

right to the lot is a good one as against the tax deed, and he is in possession of it. He is not in position to sue at law, and as the defendant, who could bring ejectment, forbears to do so, there is no remedy by which the complainant can have the title settled except in equity; and in order that he may be quieted in his title and possession and relieved from apprehension of vexatious annoyance in the future by the adverse claimant, a court of equity will take jurisdiction to remove the cloud that shadows the title. 1 Story Eq., §700, 711a; Clouston vs. Shearer, 99 Mass., 209; Polk vs. Pendleton, 31 Md., 118; Eldridge vs. Smith, 34 Vt., 484.

The parties both claim through Clinton, who held the lot at the beginning of 1877. The evidence shows that he sold and conveyed it January 29th, 1877, to Huntley, who sold and conveyed it January 25th, 1885, to complainant. This is complainant's title. On the other hand, the evidence shows that the lot was sold in 1878 on an assessment to Clinton, for the taxes of 1877, on same, and that the certificate of sale having been assigned to defendant, a tax deed, in regular form, was made to him March 4th, 1884. This is his title. All the steps towards it after the sale were in accordance with the directions of the statute.

The title of complainant is good, unless the title of his vendor, Huntley, was divested by the tax sale. Whether it was so divested depends upon the validity of the sale. Complainant says the sale was invalid on several grounds, only one of which we will consider, as our conclusion on that is decisive of the case, and renders unnecessary any determination of questions raised by appellant other than on this one,—which is, that the taxes of 1877, for which the land was sold, had been paid by Huntley, who had purchased from Clinton. If that is true, the sale was illegal and the deed under it void; and complainant can

have it set aside, even after the limitation of one year from the recording of said deed, as will be seen in §63, chap. 1976 of the Acts of 1874, under which the sale was made.

The evidence in regard to the payment is that of Huntley, who says : " I came to Jacksonville in June or July, 1878, and saw the property advertised for sale, and went to the collector and paid the taxes upon it," and that the receipt given him is lost. The evidence for the other side is that of the collector. He does not say positively that the taxes were not paid, but that he kept a receipt-book on which the stubs showed payment of taxes, and that this has no showing of the alleged payment by Huntley. He sometimes received money out of his office, but that he did not understand this to be a payment of taxes until he so applied the money on his books ; that it was his custom to make the stub entries when taxes were paid ; but it was possible, though not probable, that sometime he may have failed to do so. This is in the nature of negative evidence, which, we think, does not overcome the positive testimony of a witness, who speaks with clear certainty, and who stands unimpeached. The answer denying the payment could not have been made upon any knowledge of the defendant, and it was therefore sufficient to sustain the allegation of the bill on this point that it was supported by a credible witness as against other indefinite testimony.

We conclude that it is shown the taxes on the land were paid, and that the deed made in pursuance of the illegal sale is void.

The remaining question is whether there is proof of possession of the land in the complainant sufficient to warrant jurisdiction in equity. We think there is. Huntley says he took possession within a week after getting his deed from Clinton, retained it till he sold to complainant, and has held possession since under complainant. He explains

by saying that his possession consisted in cutting timber and wood off the land, clearing it up and getting ready to plant on it; was at work on the land up to the time he sold to complainant, but did not live on it; has been working on it since he sold to complainant, cutting wood and working around orange trees; cultivated the land since I sold to complainant, and held possession under him, and now hold such possession.

Against this there is the evidence of Rain, who lives near the place, that there has been no cultivation in five or six years; no crops in the last three years; no house on it; nor any fence around it; piece of old fence there; but "could not say whether there were any orange trees on it." Defendant says there has been no cultivation of the land within the past two years; that the land has been put to no use during that time, "except that Huntley cuts a little wood off of it." Demps says there is no fence around the land, and no cultivation of it for four years, "except that Captain Huntley cut a little wood off of it." There is no denial of the fact stated by Huntley that there were orange trees on the land, which he cultivated, and the evidence for defendant sustains him in the assertion that he was cutting wood on it, thereby exercising dominion, which implied possession. In the absence of any pretense of possession or use by any one else, we think the evidence sufficient to sustain the assertion of complainant that the possession was in him when this suit was commenced. If there were orange trees on it which Huntley "worked around," as he says was the fact, and not denied, that was cultivation and improvement of the land in the sense of the statute, which recognizes possession to be sufficient where the land "has been usually cultivated and improved" without enclosure. There were only twenty-three acres in the lot, but to constitute possession it was not necessary

that the whole should be in cultivation. McClellan's Digest 732, §6.

The title and possession, according to our view of the evidence, being in the complainant, we think that the decree was correct, and it is affirmed.