44   601
45   511
45   517
47   348

W. F. HUGHEY, APPELLANT, VS. ROBERT W. WINBORNE, AND THE CAMP MANUFACTURING COMPANY, APPELLEES.

1. A court of equity has jurisdiction to declare void as a cloud on title a tax deed not made by statute prima facie evidence of title or of the regularity of the proceedings, where the defect does not appear upon the face of the deed and is of such a character as that it will not necessarily and indubitably appear from the evidence that the tax title holder must necessarily introduce in order to prove title under such deed.

2. A deed executed by the Governor and Secretary of State under Chapter 4011, acts of 1891, for lands certified to the State for nonpayment of taxes assessed under Chapter 4010, acts of 1891, may be declared void as a cloud on title by a court of equity, where the assessment was made by the collector of revenue, and not by the assessor, and the land was not assessed in the name of the owner or person son in whose name the return was made, or as "unknown," but in the name of a fictitious company or person; and this is true whether the deed be or be not prima facie evidence of title or of the regularity of the proceedings.

3. An appellate court will not sua sponte notice a defect of allegation in a bill of equity, unless the defect be such as that the bill wholly fails to state a case for equitable relief.

4. Knowledge on the part of the owner of property that an alleged assessment thereof for taxes is void, does not vitalize such void assessment, nor does the payment of a void tax in one year render valid a void tax of a succeeding year.

5. Section 22, of Chapter 4010, acts of 1891, does not authorize the assessment of property in the same name as it was assessed for the previous year, nor does section 31 authorize such assessments except when made by the clerk of the court.

6. Wrongful forcible possession is not such possession as the owner must have in order to maintain a bill to remove a cloud on title.

7. Where the defendant in a proceeding in equity to declare void a deed held by him based upon a certification of land to the State for non-payment of taxes, makes no proof as to the amount of taxes and disbursements which he claims should be refunded to him by the complainant, it is not error for the court to declare void the deed without making provision for the payment by complainant to defendant of taxes and disbursements.

Appeal from the Circuit for Alachua County.

The facts in the case are stated in the opinion of the court.

*Horatio Davis,* for Appellant.

*W. W. Hampton,* for Appellees.

PER CURIAM.

This cause was referred by the court to two of its commissioners, Messrs. Maxwell and Glen, for investigation, who report that the decree ought to be affirmed.

From the abstract it appears that this was a suit in equity in the Circuit Court of Alachua county, brought by appellees against appellant to remove a cloud upon their title, by declaring void a tax deed to appellant, executed by the Governor and Secretary of State under Chapter 4011 of the acts of 1891, known as the "Hammond Act," and for injunction. The court rendered final decree for appellees, and this appeal was taken therefrom.

The first error assigned is the order of the court overruling a demurrer to the bill. The ground of demurrer was a general one, *viz*: No equity in the bill. The only contention made by appellant under this assignment is that the assessment upon which the tax deed was based is void on its face, and that a deed executed under this act is not made *prima facie* evidence of the regularity of the assessment and sale, therefore the person relying upon the deed must introduce all of the proceedings in evidence in support of his title, and as the invalidity of the sale would then appear, no cloud would exist. The appellant attempts no application of his contention to the specific allegations of the bill, but rests upon the broad assertion that any defect in the proceedings must necessarily appear from the proceedings which he would be compelled to prove.

For the purposes of this case we will assume that the appellant correctly contends that the deed is not *prima facie* evidence of a valid sale. In order to state a case the bill should show a vital defect in the proceedings leading up to the sale, and such defect must be one not apparent upon the face of the proceedings, but depending for its proofs upon extrinsic evidence.

In this bill two irregularities are alleged. The first is that the property was assessed by the collector of revenue, who is not, by the act under which this assessment was made, authorized to assess property. It is not affirmatively alleged that this irregularity does not appear from the face of the assessment roll, but there is no presumption that it does so appear. If there is any presumption in the case it is that the roll does not indicate on its face by whom the items therein were entered, as in the case of Sloan v. Sloan, 25 Fla. 53, 5 South. Rep. 603, where an

assessment made by the collector of revenue was held to be invalid. The case, therefore, would not in our judgment fall within the rule stated in Heywood v. City of Buffalo, 14 N. Y. 534, even if that case correctly applies the principle stated therein. As bearing upon the same subject, see Smith v. Gilmer, 93 Ala. 224, 9 South. Rep. 588; Goldsmith v. Gilliland, 10 Sawyer, 606, text 609; Teal v. Collins, 9 Oregon, 89; Chaplin v. Holmes, 27 Ark. 414; Hibernia Savings and Loan Society v. Ordway, 38 Cal. 679. See, also, Barnes v. Mayo, 19 Fla. 542; Shalley v. Spillman, 19 Fla. 500; Reyes v. Middleton, 36 Fla. 99, 17 South. Rep. 937. Upon this allegation of irregularity alone it should be held that the bill states a case for relief.

The other allegation of defect in the assessment is that the collector assessed the property to the "Albion Mining Co," there being no such company in existence, and did not assess the property to the owners thereof nor as unknown. This defect necessarily depends upon matter *in pais,* or parol evidence, for the assessment roll would not necessarily show who was owner, or in possession, or who made the return. The assessment on its face would *prima facie* be to the owner or person making the return, and it would require extrinsic evidence to show otherwise. The tax title owner would not *necessarily* be compelled to prove that it was assessed to one not the owner, merely because such was the fact, for he might produce evidence contrary to the fact, and in that event the owner would be compelled to introduce counter evidence. This we think under our decisions above referred to gives equity jurisdiction, though the contrary is held in Marsh v. City of Brooklyn, 59 N. Y. 280. We think the true rule is that the defect must *necessarily* and *indubitably* appear from the evidence that the tax title holder must *necessarily* in-

troduce to sustain his title, in order to oust the court of equity of jurisdiction. The statute (Chap. 4010, acts of 1891) under which the assessment was made provided, in section 23, that the property must be assessed "in the name of the owner or person in whose name the return is made," or in certain cases as "unknown." We will assume for the purposes of this discussion that an assessment made in the name in which the property is returned is valid, whether the return is made by a person duly authorized thereto or not. In order that an assessment be shown to be invalid it must appear that the name in the assessment roll is not that of the owner, nor that in which the return was made. The bill distinctly avers that in this case the assessment was not in the name of the owner. Whether it sufficiently negatives the idea that the property was assessed as returned is a more difficult question. The allegation is that the property was assessed to the Albion Mining Co., there being no such company in existence.

The other portions of the revenue act of 1891 which refer to the return of property for taxation are section 22, which provides for a description "as returned for taxation by the owner or agent;" section 23, where it provides that "the owner or person making the return of any real estate" may complain of the valuation fixed by the assessor; and section 25, where it provides that the assistant assessor shall give the value of his assessments and "the names of the owners or persons making the tax returns." In each of these sections it appears that the statute contemplates a return in the *name of the person making it*, and it can not be doubted that the language in the earlier part of section 23. "the owner or person *in whose name the return is made*," is used in the same connection and

contemplated a similar return.   In this case there is   no
contention of counsel that the bill is faulty in not negativ-
ing the idea that the property was assessed as returned,
and the only question is whether such allegation is so en-
tirely wanting in the bill as to necessitate cognizance of
it on the part of the court, in obedience to the rule of this
court requiring it to notice the defect where a bill wholly
fails to exhibit a cause of action.   We think there should
be an entire lack of reasonable inference of the necessary
fact from the pleadings, in order that such defect be no-
ticed *sua sponte* by the court.   Here the allegation is that
there was no such company in existence as that in whose
name the property was assessed.   Under a statute contem-
plating that the return be made only by the   person   in
whose name it is made a denial of the existence of   such
person, creates an inference that no return was made by
such person or its agent sufficiently strong to justify   the
court in treating the bill as sufficient in this respect in
the absence of specific attack upon this ground.   And this
would be true even though the law, while not contemplat-
ing, would still uphold as a basis of an assessment a   re-
turn made in the name of another than the person making
it.   This defect in the assessment is one not   apparent
upon the face of the tax proceedings.   The ownership   of
land is a fact which may rest solely upon parol testimony,
and any record title may be defeated by such   testimony
showing the requisite adverse possession.   Whether or not
an assessment is made in the name used in a return for
taxes is also a question which may be proven or disproven
by evidence not of record, and which may be lost, and the
facts falsified if not proven while evidence of the truth is
acessible.   Where this is the case equity should give relief
(Fonda v. Sage, 18 N. Y. 173; Ogden City v. Armstrong,

168 U. S. 224, text 238, 18 Sup. Ct. Rep. 98; Conant v. Buesing, 23 Fla. 559, 2 South. Rep. 882; 17 Ency. Pl. & Pr. 285), and the demurrer to the bill was properly overruled.

The second assignment is based upon the action of the lower court in sustaining exceptions to paragraphs four and six of defendant's answer. Paragraph four alleged that if the land was not properly assessed, the fact was known to complainants, as they had paid taxes on the land assessed in the same way for other years, and the tax receipts delivered to them showed this alleged wrong assessment.

Knowledge on the part of the owner of property that an alleged assessment thereof for taxes is void does not vitalize the void act of the assessor. Nor does the payment of a void tax in one year preclude a land owner from refusing to pay such assessments in succeeding years. The provision in section 22 of the act of 1891, referred to by counsel in his brief, authorizes only the *description* of the property to be taken from the rolls of the preceding year. It is not the description which is complained of here. The provision in section 31, that all assessments shall be legal which shall be assessed to the same owner as for the previous year, refer to assessments made by the clerk, and not those made by the assessor.

There is no argument by appellant in support of paragraph six of his answer, nor was it susceptible of defense.

Under the third assignment of error the appellant contends that no possession of the property on the part of complainants was shown at the time of the filing of their bill, and that if such possession existed it was the result of a forcible and illegal ouster of defendant for the pur-

pose of acquiring such possession, and will not support this action. That wrongful forcible possession will not support a bill to remove a cloud, see Gould v. Sternberg, 105 Ill. 488; Gage v. Hampton, 127 Ill. 87, 20 N. E. Rep. 12, S. C. 2 L. R. A. 512; Comstock v. Henneberry, 66 Ill. 212; 17 Ency. Pl. & Pr. 318. Contra, Phillipi v. Leet, 19, Colo. 246, 35 Pac. Rep. 540; 17 Ency. Pl. & Pr. *supra.*

There is evidence to support the finding of the chancellor that complainants were in possession of the land when they filed their bill. They had been in undisputed actual occupancy and control of the land for several years when, a few weeks before the suit was filed, defendant entered upon the land during the temporary absence of those holding under complainants. There may be some question as to whether this was such ouster of complainants as to preclude the bringing of this action while this status existed (Langdon v. Templeton, 66 173, text 181, 28 Atl. Rep. 866; Dyer v. Krackauer, 14 Mo. App. 39) ; but however this may be, there is evidence that without force or threats the persons whom defendant placed on the property surrendered it to complainants several days before the suit was instituted, and that they remained upon the land until after bill was filed. Under these circumstances we do not think their possession was so lacking in equity as to preclude relief by such tribunal.

According to the evidence the defendant took possession of only about one acre of land upon which was located the house which had thereto been previously occupied by complainants' tenants. Upon complainants regaining possession of that portion of the property, defendant built a small house out in the woods, put a man in possession of that house, who held it until after the bill was filed. No enclosure was placed around this little house and no

other act evidencing possession was done upon the part of defendant prior to filing the bill except to mine a few tons of phosphate rock near this house. All the land was wild an unoccupied except the enclosure around the house formerly in possession of complainant's tenants and the land actually covered by the little house built by defendant and that upon which he was mining. If it be conceded that ejectment might have been brought for the parts in actual possession of defendant, which is doubtful, it is by no means clear that as to all the rest of the land, the defendant could not have successfully pleaded that he was not in possession in an action of ejectment. The complainants' remedies at law were not certain and adequate, especially in view of the fact that defendant proposed to mine phosphate on the land, and thereby permanently injure it. On the whole, we think the complainants' possession was sufficient to enable them to maintain this suit.

There was nothing in the pleadings or proof before the lower court to form a basis for the relief claimed under the fourth assignment of error, nor does such relief seem to have been there urged. The consideration named in defendant's deed is not evidence of the taxes upon the land paid by him, for the Hammond Act, in section 9, provides that the prices for which land shall be sold thereunder shall be fixed by a board designated for that purpose. There is no necessary relation, therefore, between the price demanded for the land and the amount of the taxes for which it was certified to the State.

The court did not err in making no provision for their repayment in its decree. Decree affirmed.