CITY OF OLANDO, APPELLANT, VS. EQUITABLE BUILDING AND LOAN ASSOCIATION, A CORPORATION, APPELLEE.

1. The city of Orlando in 1893, 1895, 1896 and 1897 could become the holder of tax certificates based upon its sales for city taxes for lands bid off for it by its collector in cases where there are no other bidderes, and it could after the periods of redemption expired procure deeds upon such certificates from the clerk of the Circuit Court that would be prima facie evidence to the same extent as tax deeds executed to individuals upon certificates held by them.

2. Upon appeal from a decree cancelling tax certificates held by a city, as clouds upon complainant's title, the appellate

court will not adjudge such decree erroneous upon the ground that the bill does not allege a tender or offer to pay the tax for which the land was sold, where the appellant does not suggest or insist upon such supposed defect in the bill as a ground for reversal, even though a general demurrer for want of equity might be sufficient to raise the question, and a demurrer of this nature was interposed and overruled in the court below and the ruling thereon is assigned as error in the appellate court.

3. A general demurrer to a bill in equity should be overruled if the bill states any ground for equitable relief.

4. Grounds of demurrer to a bill in equity which seek to have the court hold the whole bill bad for objections applicable only to parts thereof, are properly overruled.

5. Even after a decree pro confesso, relief must be granted only as to the case made by the bill, and if the bill makes no case for equitable relief, no decree ought to be entered thereon for complainant.

6. The failure of the assessor of the city of Orlando to annex to the city assessment roll an affidavit in the form prescribed by section 8, Chap. 3786, acts of 1887, invalidates the assessment.

7. The city clerk of Orlando was not in 1893 and 1895 authorized to take the affidavit of the city assessor required to be annexed to the assessment roll by section 8, Chap. 3786, acts of 1887.

8. The official publication of notice of tax sales in two newspapers, where the law requires it to be published officially in one only, renders the sales invalid.

9. The failure of the tax collector of the city of Orlando to forward a copy of his report of city tax sales of 1897 to the Comptroller does not render such sales invalid. (MAXWELL, J., dissenting.)

10. Failure to comply strictly with those provisions of tax laws which are intended for the guide of officers in the conduct of business devolved upon them, designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested can not be injuriously affected, will not usually render the proceedings

void; but where the requisites prescribed are intended for the protection of the citizen and to prevent a sacrifice of his property, and a disregard of them might and generally would injuriously affect his rights, they can not be disregarded, and failure to comply with them will render the proceedings invalid.

11. The provisions of section 8, Article IX, constitution of 1885, to the effect that no person or corporation shall be relieved by any court from the payment of any tax that may be illegal, illegally or irregularly assessed until he or it shall have paid such portion of his or its taxes as may be legal and legally and regularly assessed, have no application to proceedings to set aside as clouds upon title tax certificates or deeds made in pursuance of sales for nonpayment of taxes.

This case was decided by the Court In Banc.

Appeal from the Circuit Court for Orange County.

The facts in the case are stated in the opinion of the Court.

*Wm. H. Jewell,* for Appellant.

*L. G. Starbuck,* for Appellee.

CARTER, J.

This cause was duly considered by Division B, and there being a difference of opinion among its members as to the proper disposition of the case, it was referred to the court *en banc* for decision.

On April 25, 1898, appellee filed its bill in the Orange county Circuit Court alleging that it was the owner in

fee simple and in possession of a certain dèscribed part of
lot 1, block 24, R. R. Reed's addition to Orlando; that ap-
pellant, the city, held four tax certificates issued in pur-
suance of sales made for taxes assessed by it embracing
said land in whole or in part; that each.certificate was
null and void for reasons hereinafter mentioned, and
praying that they be cancelled as clouds upon the title.
Appellant demurred to the bill, and upon the hearing the
demurrer was sustained as to certain grounds and over-
ruled as to others, whereupon appellee dismissed so much
of the bill as related to those grounds of demurrer which
had been sustained, and appellant was required by the
court's order to answer at a fixed time.  No answer hav-
ing been filed, a decree *pro confesso* was entered,  and
thereafter, on October 22, 1898, a final decree was ren-
dered whereby each of the four certificates was  declared
null and void, and appellant was directed to surrender
same for cancellation.  From that decree the present ap-
peal was taken, and the errors assigned question the pro-
priety of the ruling on the demurrer and of the final de-
cree.

From the abstract it appears that the grounds alleged
in the bill for cancellation of the several tax certificates,
after it had been partly dismissed to conform to the ruling
on demurrer, were as follows:  As to certificate No. 107,
sales of 1893, and certificate No. 203, sales of 1895, that
the city tax assessor made the affidavit required by law
before the city clerk who was not an officer authorized to
administer oaths.  As to certificate No. 175, sales of 1896,
"Because the notice of said tax sale was published in two
newspapers, to-wit:  The Orlando Star and the Daily Re-
porter, whereas the law requires that it be published in a

newspaper." As to certificate No. 147, sales of 1877, because no report of said tax sale for 1897 was filed in the office of the Comptroller of the State as required by law.

The grounds of demurrer that were overruled were as follows: The affidavits before the city clerk were a sufficient compliance with law, and if not, the defect was not so material as to make the assessments or sales based thereon invalid. The publication of notice of tax sale in two newspapers was not thereby invalid. There, is no equity in complainant's bill. Municipalities in this State are not required to file report of tax sales with the State Comptroller.

The bill seeks to cancel, as clouds upon title, tax certificates held by a city based upon its own sales for city taxes. If under the law the city was not authorized to take a certificate of sale for its own taxes, or if it had such power, but no deed could issue to the city upon it, or if it could take a deed, but such deed would not be *prima facie* evidence, perhaps the jurisdiction of a court of equity could not be invoked to cancel such a certificate, for if the city could not take a certificate upon the tax sales, such certificate would be void upon its face, and, therefore, would not be a cloud upon title, or if such a certificate though valid could never become the basis of a deed that would *prima facie* convey a valid title, or if in proving title under a deed issued thereon the evidence necessary to be produced by the claimant would inevitably show the defects complained of in the bill, the certificate would not be a cloud upon title so as to authorize its cancellation by a court of equity. Hughey v. Winborne, 44 Fla. 601, 33 South. Rep. 249. The court is of opinion, however, that a city could become the holder of certificates such as the bill describes; that it could pro-

cure a deed upon such certificates, and that such deed would be *prima facie* evidence of the regularity of the proceedings under the statutes in force in this State at the time the bill was filed and decree rendered. The power of the city of Orlando to become the holder of certificates of sale for its city taxes seems to have been recognized in Steiff v. Hartwell, 35 Fla. 606, 17 South. Rep. 899. It is very generally held that without statutory authority a city can not become the purchaser at a tax sale, and the question here presented is as to whether there is such statutory authority. Section 52 Chapter 4115, acts of 1893, and section 51 Chapter 4322, acts of 1895, provide that at tax sales by collectors of revenue "in case there are no bidders the whole tract shall be bid off by the collector for the State." Section 57 of the former act and section 56 of the latter require the tax collector of any city or incorporated town to proceed substantially in the same manner in the collection of taxes and sale of lands and personal property for nonpayment of taxes as State tax collectors, which would authorize the city collector to bid off for the city any tract as to which there were no bidders. This authority, however, would not authorize a city to become a competitive bidder for real property at its tax sales, for it merely constitutes the city an involuntary purchaser of the property in case there are no bidders—but as such it is entitled to a certificate and a deed the same as any other purchaser at such sales. Other provisions in these statutes recognize this power of cities to thus become involuntary purchasers at their tax sales. Thus, section 4 of each act makes liable to taxation lands sold for taxes for the use of cities, and section 60 of the act of 1893 and section 59 of the act

of 1895 recognize the power in cities to hold certificates and to take deeds thereupon based upon city tax sales. While each of those acts provides that the State shall not take deeds upon certificates held by it, and that its certificates shall be evidence of the title of the State, no such provision is found with reference to certificates held by cities, and consequently the city must take a deed in the same manner as individuals, in order to perfect its title.

We are also of opinion that a tax deed to the city duly executed by the clerk of the Circuit Court upon a certificate of sale for city taxes under the statutes applicable to the certificates mentioned in the bill would be *prima facie* evidence to the same extent as deeds executed upon certificates made in pursuance of sales for State and county taxes. In order to understand the reasons for so holding it will be necessary to refer to some of the earlier statutes governing the issuance and effect of tax deeds.

Chapter 1976, act of 1874, by section 56 required city tax collectors to proceed substantially in the same manner in the collection of taxes and sale of lands for nonpayment of city taxes as collectors of revenue, and this of course included the requirement of section 54 that certificates be issued upon sales for city taxes. Sections 57 and 58 provided for the redemption of certificates for city as well as State and county taxes, and section 59 provided for the purchase of "any such tax certificates held by the State," with a proviso that the purchaser should purchase all the certificates held by the State, city or town upon the same property, &c. Section 60 provided "that on the presentation of such certificate or certificates of sale to

32 S. C.

the county clerk or the clerk of the city or town, as the case may be, after the expiration of time provided by law in this act for the redemption of land sold as aforesaid, unless the same shall have been redeemed he shall execute to the purchaser of his heirs or assigns a deed of the land, * * * which deed shall be *prima facie* evidence," &c. This section granted the power to execute the deed and prescribed its effect when so executed, but the form therein contained was applicable only to deeds upon sales for State and county taxes. This being true, section 61 was inserted which provided that "the clerk of any city or incorporated town shall make the deed for all lands sold in said city or town for the nonpayment of city or town taxes and not redeemed, substantially in the same form as provided in the foregoing section." It is evident that this section was not designed to grant to the city clerk the power to execute the deed, but merely to regulate its exercise; for the power was expressly conferred by the preceding section, which also prescribed the effect as evidence of a deed executed under such power. The obvious effect of these provisions was to make the deed executed upon a city certificate *prima facie* evidence, and this court so held in Sams v. King, 18 Fla. 557, and Florida Savings Bank v. Brittain, 20 Fla. 507. It was held in the last named case that section 62 applied only to deeds made upon certificates for State and county tax sales, although the language was broad enough to cover deeds upon certificates for city tax sales. The act of 1874 was repealed by Chapter 3099, acts of 1879, but the provisions previously referred to were reenacted in substantially the same language in sections 53 to 60, except that the clerk of the Circuit Court was substituted for the county clerk, so

that there can be no doubt that deeds upon city tax sales executed under that act were *prima facie* evidence the same as under the act of 1874. By Chapter 3219, acts of 1881, the act of 1879 was repealed, but the same provisions were reenacted by that act in sections 52 to 60, so that city tax deeds were *prima facie* evidence under that act. By Chapter 3413, acts of 1883, the act of 1881 was repealed, but substantially the same provisions were reenacted (except as hereinafter mentioned) in sections 53 to 60 inclusive, and we do not think the changes are of such nature as to make section 58, which prescribes the effect as evidence of deeds executed by the clerk of the Circuit Court, inapplicable to deeds upon city certificates executed by him. The changes made are in sections 58, 59 and 60, and are simply such as are necessary to transfer the power to execute deeds upon city certificates from the city clerk to the clerk of the Circuit Court. Section 58 omits the words "or the clerk of the city or town, as the the case may be," in order to transfer the power which under section 58 of the act of 1881, those words conferred upon the city clerk, to the clerk of the Circuit Court, and the words "such certificate or certificates of sale" at the beginning of section 58 of the act of 1883 have the same significance (that is they include city certificates) as did the same words used in the previous acts. So that the power of the Circuit Clerk to make tax deeds under the act of 1883 on city certificates is granted by section 58, which prescribes the prima facie effected to all deeds so executed by him, whether upon city or State and county certificates. Section 59 simply regulates the exercise of that power by requiring him to execute the deeds "substantially in the same form as provided in the foregoing

516 SUPREME COURT. [45th Fla.

City of Orlando v. Equit. Bd. & Ln. Asso.—Opinion of Court.

section," and section 60 likewise further regulates it so as to require the deed to be made in the name of the city, whereas the form prescribed for him to substantially follow, in section 58, would require the deed to be made in the name of the State. The subsequent statutes make no change in respect to the matters pointed out. See sections 51 to 59 inclusive, Chapter 3681, and also section 10 Chapter 3786, acts of 1887, the section last named providing that all sales for taxes made by appellant shall be made in the same manner and be of the same force as sales made under the general revenue laws of the State. See, also, sections 55 to 63 inclusive, Chapter 4115, acts of 1893, and sections 54 to 63 inclusive, Chapter 4322, acts of 1895. It is true that by Chapters 4010 and 4011, acts of 1891, no sales could be made either for city or State and county taxes, but, as already shown, by the act of 1893 the former system was reenacted, and was in force when these certificates were issued.

Many well considered cases hold that if a tax sale be void by reason of the failure to do some essential thing required to be done in pursuing the power to sell, or if the assessment upon which it is based be void at law, but is not unequal, inequitable or unjust, or void because of the omission or commission of some act that would render such assessment unequal, inequitable or unjust, and the property was subject to taxation, and the assessment made by the proper officials and the tax not paid, then equity will under the maxim, that he who seeks equity must do equity, require the owner to pay the tax for which the land was sold, or so assessed, as a condition to granting relief by cancelling the cloud created by the sale. Wood v. Helmer, 10 Neb. 65, 4 N. W. Rep. 968; Fifield v.

Marinette Co., 62 Wis. 532, 22 N. W. Rep. 705; Wisconsin Cent. R. Co. v. Lincoln County, 67 Wis. 478, 30 N. W. Rep. 619; Casey v. Wright, 14 Mont. 315, 36 Pac. Rep. 191; Farrington v. New England Invest. Co., 1 N. Dak. 102, 45 N. W. Rep. 191. We deem it unnecessary to decide at this time whether this doctrine obtains in this State, for the reason that it is not insisted upon, or suggested in the briefs filed in this court. It is true that the bill, so far as the abstract discloses, contains no offer to do equity or to pay taxes equitably due, but there is no suggestion in the briefs that the bill could not be maintained in the absence of such offer. It would not be jurisdictional, and if raised might have been cured by amendment in the court below, or the court could at the hearing have made ample provision upon the subject, if it had then been called to its attention. See Hughey v. Winborne, *supra.* Even if we should hold that the general demurrer would raise the question, as to which there is some difference of opinion among the authorities, the fact remains that it was not insisted upon in the court below, or if so, that it has been abandoned in this court.

Some contention is made in the brief that the bill was bad because complainant did not allege a payment or tender of payment of taxes as required by section 8, Art. IX of the constitution. A cursory reading of the provision referred to will demonstrate that it has no application to this case. Furthermore, the bill did not show that complainant owed taxes on other property validly and legally assessed, and the objection could, therefore, only be raised by answer. This is held in City of Tampa v. Mugge, 40 Fla. 326, text 336, 24 South. Rep. 489, to be the rule where a petition is filed under the statute to set aside an assess-

ment, and the same rule applies to a bill in equity when filed for the same purpose. Pickett v. Russell, 42 Fla. 116, 28 South. Rep. 764. The constitutional provision has, however, no application to bills of the character here being considered.

The demurrer in this case seems to have been a general demurrer to the whole bill, and the only ground applicable to the entire bill was the thirteenth, alleging a general want of equity. The bill was not entirely wanting in equity if it stated any ground for equitable relief. Thompson v. Maxwell, 16 Fla., 773; Durham v. Stephenson, 41 Fla. 112, 25 South. Rep. 284. If, therefore, the bill alleged a case for equitable relief as against any one of the certificates, this ground was properly overruled. We hold that as to three of the certificates the bill was properly brought, which disposes of this ground of the demurrer.

All the other grounds of demurrer were addressed to particular parts of the bill, and asked the court to hold the entire bill bad for objections applicable only to parts thereof. This is not permissible in equity pleading, as was held in Durham v. Stephenson, *supra*. The same questions are, however, presented as objections to the final decree, and we will consider them under the assignment of error questioning the propriety of that decree. If the bill made no case as to any one of the certificates, the final decree is to that extent erroneous, notwithstanding the decree *pro confesso* against appellant, for even after a decree *pro confesso* relief must be granted only as to the case made by the bill, and if the bill makes no case, no decree ought to be entered in complainant's favor. Price v. Boden, 39 Fla. 218, 22 South. Rep. 657.

Certificates No. 107 and 203 were attacked upon the ground that no valid affidavits of the assessor were annexed to the assessment roll as required by law. Section 8, Chapter 3786, acts of 1887, requires the city assessor to annex to the assessment roll an affidavit in the form therein prescribed. The nature of the required affidavit is such as to secure uniformity in assessments and fairness in valuations of real estate, and it is, therefore, essential. The affidavits in this case were taken before the city clerk and he is nowhere given general authority to administer oaths. He is authorized to administer oaths in certain cases only, not embracing this, by section 719 Revised Statutes, but he is not included among those authorized to administer oaths generally by section 1299 Revised Statutes. We hold, therefore, that the two certificates based upon those assessments were void. Wood v. Helmer, Fifield v. Marinette Co., Farrington v. New England Invest. Co., *supra*.

We are also of opinion that certificate No. 175 was void because the notice of said tax sale was published in two newspapers when the law required that it be published in one only. The statute, section 51, Chapter 4323, laws of 1895, required the list of lands to be sold for State and county taxes to be published in a newspaper to be selected by the board of county commissioners. Whether the city tax collector, in order to proceed substantially in the same manner as the State collector as required by the statute, must publish the city tax notice in the newspaper selected by the county commissioners, or whether he may publish in one selected by the city council, or by himself, we do not decide, but it is clear that the publication must be made in one official newspaper only. This is important to the land owner for many reasons. Two official publica-

tions entail double costs of advertising against the land, double record of the advertisement, double forwarding of the papers to the clerk and Comptroller, two affidavits of publication, two records of same, and both affidavits must be deilvered to the collector after such record. The difficulty of ascertaining which is the official publication in such cases, and which the land owner, the collector, and purchaser must regard as binding, to say nothing of complications arising from variances between the two, would seem to furnish sufficient reason for holding that two official publications can not be sustained. Besides the cost of such double publication is a matter of material interest to the land owner. The sale if for a sum including illegal costs would be void. Genther v. Lewis, 24 Kan. 309. It is true the bill does not allege that the land was sold for double costs, but it does show an attempt to make two official publications which is a grave irregularity—see Wren v. Commissioners, 24 Kan. 301—and in tax proceedings where the land owner shows a material irregularity that might have injured him, in a matter affecting his legal rights, there is no presumption of law that he was not in fact injured. The appellant in its brief in this court does not attempt to question the sufficiency of the allegations of the bill as disclosed by the abstract to show two official publications, but attempts to justify two official publications under the law, and to assert that no actual injury is shown from the irregularity.

The remaining certificate, No. 147, was attacked upon the ground that no report of the sale was made to the Comptroller. Whether the requirement that the city tax collector shall proceed substantially in the same manner as the State collector, obliges him to forward a copy of

his report of sale to the Comptroller as is the case with the State collector under section 55 Chapter 4322, acts of 1895, is a question of some doubt. Undoubtedly one copy must be filed with and recorded by the circuit clerk as required by that section, and one copy retained by the city collector as therein directed, because these officials are concerned in the matter of redemption and the circuit clerk in the matter of making the deed. See sec. tions 57 to 60 of the act above referred to. Besides, the copy filed with the clerk becomes the basis of the official record of the sale and is, therefore, indispensable. Inasmuch as the State Treasurer and Comptroller have nothing to do with city taxes, or redemption from sales therefor, there would seem to be no good reason why a *substantial* compliance with the law regulating State tax sales should be held to require the filing of a copy of the report of city sales with the Comptroller. And this it seems to us would necessarily be the case if it was not for section 59 in the act of 1895 which provides for the sale of State certificates by the State Treasurer, with a proviso that the purchaser shall purchase all the certificates held by the State, *city or town* upon the same property, or the title of the State, city or town where a deed has been made upon other certificates held by it. If the proviso be construed as a limitation upon the Treasurer's power to sell State certificates so that he must require the purchaser to purchase city certificates as a condition precedent to the purchase of the State certificates, then it would be important to require the filing of the report of city tax sales with the Comptroller for the information of the Treasurer, to guide him in making his sales. Without deciding that this is the correct construction, but assuming for the purpose of this case that it is, we think that

a failure to file the report of city  sales with the Comp-
troller should not invalidate the sales, and base this opin-
ion upon the following considerations:  Failure to com-
ply strictly with those provisions of tax laws which are.
intended for the guide of officers in the conduct of bus-
iness devolved upon them, designed to secure order, sys-
tem and dispatch in proceedings, and by a disregard  of
which the rights of parties interested can not be injuri-
ously affected will not usually render the proceeding void,
but where the requisites prescribed are intended for the
protection of the citizen, and to prevent a sacrifice of his
property, and a disregard of them might and generally
would injuriously affect his rights, they can not be disre-
garded, and failure to comply with them will render the
proceeding invalid.  Cooley on Taxation, p. 284,  471-2;
Black on Tax Titles, Sec. 155.  The provision requiring
the report to be filed with the Comptroller was not in-
tended for the benefit of the land owner.  The copy filed
with and recorded by the clerk of the court and the copy
retained by the collector are intended for his benefit, but
the copy filed with the Comptroller is for a different pur-
pose.  It is for the information of the State 'officials in
disposing of the State's certificates alone, and with that
the land owner has no concern.  We hold, accordingly,
that certificate No. 147, sales of 1897, is valid as against
the objection urged.

The final decree, in so far as it cancels the first three
certificates named, is affirmed.  As to the fourth certifi-
cate the decree is reversed, and as to that certificate the
bill is dismissed.

MAXWELL, J., dissenting.

I regret that I am not able to concur in the view of the majority of the court that a failure of a city tax collector to forward to the Comptroller a list of the lands sold for city taxes, as provided in the revenue law of 1895, is an omission of which the land owner can not complain. The statute provides that three such lists shall be made, two to be filed with officers of the city and county respectively in which the land lies, and the third to be forwarded to the Comptroller, in whose office all of the tax records of the State are gathered. None of these lists is made that to which a land owner shall especially look to ascertain whether his land has been sold.

A property holder may own lands in several counties. It would be a most natural course for such an owner, instead of prosecuting a separate search in each county, to apply to the Comptroller's office, in which should be found a record of all tax sales, for information as to the sales made of his lands. Should he ascertain all there recorded and redeem the lands from these, and after the period for redemption has expired discover that other sales had been made and not reported to the Comptroller, it would be a most harsh rule to say that he had no right to assume that the officers had performed that part of their duty requiring them to forward such lists to the Comptroller, and that, as a result of his misplaced confidence in their compliance with the law, he shall lose the land which he can no longer redeem.