332

UNITED STATES of America, Plaintiff,

v.

COUNTY OF RICHLAND, Tom Elliott, Treasurer of Richland County, and David Rosen, Defendant.

UNITED STATES of America, Plaintiff,

v.

COUNTY OF RICHLAND, William H. Linder, Treasurer of Richland County, Joseph B. Rosen, Bonnie Rosen Nurick, formerly known as Bonnie Rosen, Harvey J. Rosen, and Joseph B. Rosen, as Trustees for Bonnie Rosen, Van B. Morrison and Gladys Morrison, Defendant.

UNITED STATES of America, Plaintiff,

v.

COUNTY OF RICHLAND, William H. Linder, Treasurer of Richland County, Joseph B. Rosen, Bonnie Rosen Nurick, formerly known as Bonnie Rosen, Harvey J. Rosen, and Joseph B. Rosen, as Trustees for Bonnie Rosen, Charles B. Abernathy and Sharon K. Abernathy, Defendants.

UNITED STATES of America, Plaintiff,

v.

COUNTY OF RICHLAND, Tom Elliott, Treasurer of Richland County, and Harvey Rosen, Defendants.

Civ. A. Nos. 76–2429, 76–2431, 76–2433 and 76–2435.

United States District Court, D. South Carolina, Columbia Division.

June 8, 1981.

Mary G. Slocum and Wistar D. Stuckey, Asst. U.S. Attys., Columbia, S.C., for plaintiff.

County of Richland and Tom Elliott (William H. Linder substituted for Tom Elliott as Treasurer), Ben T. DeBerry, Columbia, S.C., for defendants.

David Rosen, pro se.

## ADDITIONAL FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CHAPMAN, District Judge.

This matter is again before the Court following dismissal of the appeal of these actions by the United States Court of Appeals for the Fourth Circuit. *United States of America v. David Rosen, et al. and County of Richland*, Nos. 80–1517/1518 (4th Circuit, filed Feb. 19, 1981). The Fourth Circuit found appeal to be premature on the ground that the Order appealed from was not a final order within the meaning of 28 U.S.C. § 1291.

The basis of the Appellate Court's finding is this Court's failure to rule upon certain counterclaims raised by the Rosen defendants in their answers. The Court confesses it overlooked the counterclaims, but would note, that save properly pleading and answering the counterclaims, neither party ever again addressed the issue in their briefs or at the trial of the action.

These four cases all involve the same basic issues and were consolidated for trial without a jury. The facts determined at the November 7, 1979, trial are detailed in this Court's June 24, 1980, Order, 500 F.Supp. 312, but will be briefly restated here.

All four actions were commenced by the United States seeking a declaration (1) that the tax deed involved in each of the cases is void and the title thereunder invalid; (2) setting aside the tax deed; (3) declaring title to be vested in the Secretary of Housing and Urban Development; and (4) that the Secretary be given immediate possession of the property. In Civil Actions No. 76–2433 and 76–2431, the United States also sought foreclosure of certain mortgages held by it on the subject properties.

Each of the purchasers at the tax sales (hereinafter "the Rosens") served and filed an answer and counterclaim. By their respective counterclaims, the Rosens sought reimbursement from the United States of certain sums expended by them as a result of their purchasing the properties.

After the trial, this Court filed its Order containing its findings of fact and conclusions of law wherein it declared the tax deeds null and void. The Court further ruled that the Secretary of HUD was entitled to immediate possession of the properties involved in actions No. 76–2429 and 76–2435, and that the Secretary could proceed with foreclosure of the mortgages in 76–2431 and 76–2433.

The Rosens continue to seek reimbursement for various expenses incurred as a result of their purchase of the lands in question. Specifically, they seek to recover all sums spent in purchasing, improving, and paying taxes on the subject properties. As support for their position, the Rosens cite South Carolina Code § 12–49–600 (1976). This section provides as follows:

Whenever tax title to any lands or other property sold for delinquent taxes by the State or any subdivision thereof pursuant to the statute laws of this State shall be found defective and the purchaser at such sale, after having been placed in actual possession thereof, shall be dispossessed of the same and the taxes levied against such property, for the enforcement of which such sale was held, shall have been properly levied and constitute a proper lien thereon, the purchaser at such sale shall have and is given a first lien on such property and subrogated to all rights of the taxing authority to the extent of all amounts paid for the costs of all improvements made on such property while in possession thereof. Such liens shall bear

interest at the rate of six per cent per annum on the date of payment by the purchaser therefor. South Carolina Code Ann. § 12–49–600 (1976).

Reliance on this statute is, however, misplaced. Section 12–49–630 further provides that § 12–49–600 "shall not apply unless an action is instituted within two years from the date of the tax sale." It is undisputed that this action was not commenced within two years of the sale; the sale occurred in 1973, and suit was instituted by the United States in 1976. The Rosens may not recover their expenditures on the basis of § 12–49–600.

The South Carolina Supreme Court has considered § 12–49–600, and has strictly construed the limitations imposed by it in *Red Oak Lands, Inc. v. Lane*, 268 S.C. 631, 235 S.E.2d 718 (1977). In that opinion, the Court declared certain principles of law contained in 72 Am.Jur.2d, State and Local Taxation, §§ 1036, 1041 (1974), to be the law of this jurisdiction. Therefore, it was to this source that this Court turned in seeking to determine how the South Carolina court would deal with the issue involved here.

The passages from Am.Jur. noted that the general rule is that the doctrine of *caveat emptor* applies against purchasers at tax sales. In § 1045, however, an important exception to this general rule was noted:

The doctrine of *caveat emptor* which generally is applied to preclude a tax sale purchaser from suing the owner for recovery of reimbursement for taxes paid, when his tax title proves to be invalid, is not applied when the owner seeks affirmative equitable relief against the purchaser at an invalid tax sale. Under the principle of equity that he who seeks equity must do equity, it is the general rule, that when the owner comes into equity seeking affirmative, equitable relief against the holder of an invalid tax title by way of cancellation of the tax deed or certificate, the quieting of title to the land, or other relief which will in effect invalidate the tax sale and confirm his own title, and the taxes assessed against the owner for which the land was sold were valid, the owner must, as a condition precedent to obtaining the equitable. relief sought, do equity *by reimbursing the purchaser for the amount of taxes and penalties, interest, and costs justly chargeable against the land and paid by the purchaser, with legal interest from the time* of such payment from which may be deducted rents or other income from the land received by the purchaser while in possession under his tax title. 72 Am.Jur.2d, State and Local Taxation, § 1045 (1974) (footnotes omitted).

It is, however, incumbent upon the purchaser to show the amount of taxes which he has paid. "[W]hen the defendant tax purchaser makes no proof of the amount of taxes and disbursements which he claims should be refunded, the Court may grant the plaintiff relief without making provision requiring him to reimburse the tax purchaser." *Id.*, citing *Hughey v. Winborne*, 44 Fla. 601, 33 So. 249 (1902), *Hersey v. Milwaukee County*, 16 Wis. 185, 186 (1862).

At the trial, only one witness, Albert A. Kennedy, was called by the defendants. Kennedy, an employee of Richland County, did not testify regarding the purchase price of the respective properties; nor did he testify regarding total taxes paid by the purchasers, or the cost of improvements made to the properties. The only evidence available regarding these matters is documentary evidence introduced by the government, the tax deeds. These deeds indicate that David Rosen paid the sum of $1100 for the property involved in Civil Action No. 76–2429; taxes due amounted to $139.34, and $8.50 represented costs and penalties. In No. 76–2431, Joseph B. Rosen paid the purchase price of $500.00 for property sold to collect the sum of $43.67: $35.17 in tax and $8.50 in costs and penalties. Joseph Rosen also paid $1,000.00 for the subject property in 76–2433. Of this amount $313.23 was paid for taxes and $8.50 for penalties and costs. The tax deed introduced in 76–2435 indicates that Harvey J. Rosen paid $1200.00 for the subject proper-

ty. Of this sum, $35.17 was paid for tax; again, penalties and costs amounted to $8.50.

Pursuant to the procedure outlined in South Carolina Code § 12–49–460(4), the sheriff is directed, after deducting the costs and expenses of the tax sale, to pay over to the County Treasurer the taxes, charges and penalties due and incurred by the defaulting tax payer. Subsection (5) of this same statute makes provisions for any excess remaining after these payments have been made:

(5) Upon written notice given or information ascertained from the records of any mortgage or other lien on the premises so sold for taxes, hold the excess, if any, until authorized or directed by proper judicial authority as to the mode of disposition thereof or until he shall receive the written consent of the defaulting taxpayer that the excess be paid over to a mortgagee or lien creditor, according to priority if more than one, when he shall comply with such authorization or direction of proper judicial authority or with the terms of such written consent.

The record does not reveal the sheriff's disposition of the excess received at the tax sales of these properties. The foregoing statute indicates that the plaintiff mortgagee, if it has not already, may apply to the sheriff for the recovery of the excess. The United States, as mortgagee, is apparently entitled to recover the excess amount upon compliance with South Carolina Code § 12–49–460(5).

There is no evidence of the amount of taxes paid on these properties by the Rosens in the years since their tax sale purchases. These amounts, however, could easily be determined from records available in the Richland County Treasurer's Office.

There is no indication that the properties have been improved in any way. If improvements have been made, there is no evidence whatsoever of the cost of these improvements.

■ While it is clear under the general rule that the Court could deny these defendants relief on the grounds that they have failed in proving these expenses, equity demands that certain amounts be returned to the Rosens. The United States is ordered to reimburse the respective Rosens in the amounts stated in the tax deeds. Furthermore, the United States is ordered to reimburse the Rosens in the amount of all real property taxes paid to Richland County since the tax sales of these properties. Because, however, the defendants have utterly failed to show any improvements or expenditures for improvements on the subject properties, no provision is here made to require the United States to reimburse the tax purchasers on these claims. In pleading their counterclaims, these defendants sought no interest on any amount recovered under those claims. Therefore, no provision is here made for the payment of interest on their reimbursements.

The Rosens are hereby ordered to provide proof to the Court and to the United States of the total amount of real property taxes paid on these properties since the 1973 sale. Within sixty days of the filing of this information with the Clerk of Court, the United States shall effect reimbursement to the proper individuals of these amounts, as well as those amounts stated in the tax deeds.

AND IT IS SO ORDERED.