JOHN W. MALONE, *Petitioner*, v. CITY OF QUINCY, *Respond-
ent.*

Opinion Filed June 26, 1913.

1. Certiorari is a common law writ which issues in the sound
   judicial discretion of the court to an inferior court, not to
   take the place of a writ of error or an appeal, but to cause
   the entire record of the inferior court to be brought up by
   certified copy for inspection, in order that the superior court
   may determine from the face of the record whether the in-
   ferior court has exceeded its jurisdiction, or has not pro-
   ceeded according to the essential requirements of the law, in
   cases where no direct appellate proceedings are provided by
   law.

2. Municipalities are legal entities for local governmental pur-
   poses, and they can exercise only such authority as is con-
   ferred by express or implied provisions of law. The exist-

ence of authority to act cannot be assumed, but it should be made to appear.

3.  Where particular powers are expressly conferred upon a municipality and there is also a general grant of power, such general grant by intendment includes all powers that are fairly within the terms of the grant and are essential to the purposes of the municipality, and not in conflict with the particular powers expressly conferred. The law does not expressly grant powers and impliedly grant others in conflict therewith.

4.  If reasonable doubt exists as to a particular power of a municipality it should be resolved against the city.

5.  When there are both special and general grants of power to municipal corporations to pass ordinances, those given under the special grant, as a general rule, can only be exercised in the cases and to the extent as respects those matters allowed by the charter or incorporating act; and the powers given under the general grant do not enlarge or annul those conferred by the special grant in respect to its subject-matters, but give authority to pass ordinances, reasonable in their character, upon all other matters within the scope of the municipal authority not repugnant to the constitution and laws of the State.

6.  A general clause conferring power upon a municipality can give no authority to abrogate the limitations contained in special provisions.

7.  When to accomplish a general municipal purpose authority and powers are expressly conferred upon a city, and it does not appear that only the powers expressly given are to be exercised, other authority and powers that are incident to or consistent with those expressly given, may be implied when necessary to fully effectuate the express powers and the general purposes designed, if such implication may fairly arise from the language used and the object desired.

8. When authority and powers with reference to particular subjects are expressly conferred in specific terms upon municipalities, other authority and powers that in their nature or extent would materially increase or be inconsistent with the powers that are expressly given in specific and limited terms, are not to be implied, particularly when the powers expressly given do not include all the authority that may have been conferred with reference to the designated subjects.

9. Where express specific power is conferred upon a municipality to regulate a common utility, a continuance of its use is contemplated; and the power given to regulate the use does not authorize a prohibition of a lawful use in any part of the city. If the use degenerates into a nuisance it is within the power of the city to abate the nuisance or prohibit the use.

10. Power of a municipality to prohibit the use of earth closets within its limits cannot be implied merely from authority expressly given to regulate their use; and power to prohibit the use of earth closets in a city is not conferred by general powers given to conserve the public health and general welfare, when the authority to regulate the use of earth closets is expressly conferred in definite terms limited in their scope and purpose.

11. If earth closets in a city for any reason become a nuisance or otherwise unlawful, the municipality may by reasonable regulations abate them or otherwise deal with them as the charter powers may authorize.

12. When the use of earth closets is contemplated by a municipal charter, and express limited authority is given to regulate the use of them, their proper use as such is not unlawful and cannot be prohibited by the municipality in the absence of express authority to do so, or unless such closets become a nuisance or their use is otherwise unlawful and within the power of the city to abate or prohibit.

13. The express authority given the city "to regulate the construction, location and arrangement of earth closets" in the connection used in the charter Act of Quincy, Chapter 5844.

Acts of 1907, has reference to the *location* of such closets as they are used on property in the city, and does not authorize a prohibition of the proper use of earth closets in any part of the city. Nor does the express authority to issue bonds for construction and maintaining water-works and a "system of Sewerage" give the city power to prohibit the use of earth closets.

14. An ordinance forbidding the use of earth closets in designated portions of the city of Quincy, without reference to whether such closets are a nuisance, is not authorized by the Charter Act, Chapter 5844, Acts of 1907; and a judgment of the municipal court imposing a penalty for a violation of such ordinance is invalid and may be quashed on certiorari.

Certiorari to Circuit Court of Gadsden County; J. Emmet Wolfe, Judge.

Judgment quashed.

*Y. L. Watson, Fred T. Myers* and *T. L. Clarke,* for Petitioner;

*J. Baxter Campbell,* for Respondent.

WHITFIELD, J.—A petition was presented to this court in which it is in effect alleged that a judgment of the municipal court of the City of Quincy, Florida, imposing a penalty upon the petitioner, was affirmed on appellate proceedings in the Circuit Court; and that the judgment is unlawful and void because the ordinance on which it is predicated is not authorized by the powers granted to the municipality. In response to the prayer of the petition a writ of certiorari was issued from this court directing that a certified copy of the record of the proceedings complained of be brought here for review.

As the Circuit Courts have final appellate jurisdiction

of the judgments of municipal courts, no appellate proceedings lie in such cases from the Circuit Courts. But this court has express power to issue writs of certiorari.

Certiorari is a common law writ which issues in the sound judicial discretion of the court to an inferior court, not to take the place of a writ of error or an appeal, but to cause the entire record of the inferior court to be brought up by certified copy for inspection, 'in order that the superior court may determine from the face of the record whether the inferior court has exceeded its jurisdiction, or has not proceeded according to the essential requirements of the law, in cases where no direct appellate proceedings are provided by law. Seaboard Air Line Ry. v. Ray, 52 Fla. 634, 42 South. Rep. 714; Jacksonville T. & K. W. Ry. Co. v. Boy, 34 Fla. 389, 16 South. Rep. 290; Hunt v. City of Jacksonville, 34 Fla. 504, 16 South. Rep. 398.

The ordinance of the municipality that is here assailed is as follows: "That from and after the passage, publication and approval of this ordinance, it shall be unlawful for any person to use, keep, erect or maintain within the corporate limits of the City of Quincy, Florida, any open or surface closet or privy, Provided, that this ordinance shall not apply to persons whose property, lot, house or residence is situate more than two hundred feet from the main sewer line or the water main."

Municipalities are legal entities for local governmental purposes, and they can exercise only such authority as is conferred by express or implied provisions of law. The existence of authority to act cannot be assumed, but it should be made to appear. Where particular powers are expressly conferred upon a municipality and there is also a general grant of power, such general grant by intendment includes all powers that are fairly within the terms

of the grant and are essential to the purposes of the municipality, and not in conflict with the particular powers expressly conferred. The law does not expressly grant powers and impliedly grant others in conflict therewith. If reasonable doubt exists as to a particular power of a municipality it should be resolved against the city. State *ex rel.* Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183; Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; 1 Dillon Mun. Corp. (5th, Ed.) Sec. 237; 28 Cyc. 265, 751.

When there are both special and general grants of power to municipal corporations to pass ordinances, those given under the special grant, as a general rule, can only be exercised in the cases and to the extent as respects those matters allowed by the charter or incorporating act; and the powers given under the general grant do not enlarge or annul those conferred by the special grant in respect to its subject-matters, but give authority to pass ordinances, reasonable in their character, upon all other matters within the scope of the municipal authority not repugnant to the constitution and laws of the State. Mernaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 34; Porter v. Vinzant, 49 Fla. 213, 38 South. Rep. 607.

General powers expressed in comprehensive terms are conferred upon municipalities because though particular powers are specifically given, it is difficult to enumerate all the powers that may be useful and intended for the general purpose designed, or to make effective the particular powers expressly conferred. But the powers intended to be given by the general grant of authority may be ascertained by a consideration of the main object contemplated and of the nature, extent and purpose of the powers expressly conferred; for in such cases general powers are given not to enlarge, but to make effectual the particular

powers expressly granted, and to accomplish the general purpose designed. A general clause conferring power upon a municipality can give no authority to abrogate the limitations contained in special provisions, 2 Dillon on Mun. Corp. (5th. Ed.) Secs. 585-586; City of Yonkers v. Yonkers R. R. Co., 51 App. Div. (N. Y.) 271; State v. Ferguson, 33 N. H. 424.

When to accomplish a general municipal purpose authority and powers are expressly conferred upon a city, and it does not appear that only the powers expressly given are to be exercised, other authority and powers that are incident to or consistent with those expressly given, may be implied when necessary to fully effectuate the express powers and the general purpose designed, if such implication may fairly arise from the language used and the object desired. But when authority and powers with reference to particular subjects are expressly conferred in specific terms, other authority and powers that in their nature or extent would materially increase or be inconsistent with the powers that are expressly given in specific and limited terms, are not to be implied, particularly when the powers expressly given do not include all the authority that may have been conferred with reference to the designated subjects. See 28 Cyc. 266; 1 McQuillim Mun. Corp. Sec. 355.

Where express specific power is conferred upon a municipality to regulate a common utility, a continuance of its use is contemplated; and the power given to regulate the use does not authorize a prohibition of a lawful use in any part of the city. If the use degenerates into a nuisance it is within the power of the city to abate the nuisance or to prohibit the use. Power of a municipality to prohibit the use of earth closets within its limits cannot be implied merely from authority expressly given to

regulate their use; and power to prohibit the use of earth closets in a city is not conferred by general powers given to conserve the public health and general welfare, when the authority to regulate the use of earth closets is expressly conferred in definite terms limited in their scope and purpose. If earth closets in a city for any reason become a nuisance or otherwise unlawful, the municipality may by reasonable regulations abate them or otherwise deal with them as the charter powers may authorize. See City of Orlando v. Pragg, 31 Fla. 111, 12 South. Rep. 368, 34 Am. St. Rep. 17, 19 L. R. A. 196; 28 Cyc 735. But when the use of earth closets is contemplated by a municipal charter, and express limited authority is given to regulate the use of them, their proper use as such is not unlawful and cannot be prohibited by the municipality in the absence of express authority to do so, or unless such closets become a nuisance or their use is otherwise unlawful and within the power of the city to abate or prohibit. See 28 Cyc. 715, 751; Joyce on Nuisances, Secs. 405, 406; Teinen v. Lally, 10 N. Dak. 153, 86 N. W. Rep. 356.

It may be that the legislature could have expressly conferred upon the city larger powers including authority by reasonable regulations to prohibit the use of earth closets and privies in the city after a more suitable system had been provided for; but no such extensive power has been conferred.

The Charter Act of the City of Quincy provides that "The mayor and city council shall have power by ordinances, to provide for the cleaning and keeping in good sanitary condition any and all premises within the limits of the city; to regulate the construction, location and arrangement of earth closets and privies; to let by contract or create a specific department for the removal of all excrements and filth from privies and earth closets; to

compel the owners or occupants of premises to provide buckets or other receptacles as may be deemed necessary; and to make the actual expense of the measure contemplated in this section, including the expense of removal of the excrements and filth and the cleaning of the earth closets, privies and receptacles, a special tax and lien upon the premises, and to enforce the payment thereof in the same manner as is or may be provided by law for the enforcement of the payment of other taxes levied upon said premises; to provide the city with water by water works within or beyond the boundaries of the city; ...... to pass all ordinances necessary for the health, convenience and safety of the citizens; and to carry out the full intent and meaning of this act, and to accomplish the object of its incorporation; ........... to impose fines, forfeitures, penalties and terms of imprisonment for a breach of any city ordinance." Power is also given the city to issue bonds "for raising money to be used in constructing or maintaining waterworks; ......... for the purpose of constructing and maintaining a system of sewerage, or otherwise promoting the health of said municipality." The act also provides that the general laws in force as to the government of cities and towns in the State, not inconsistent with the special charter act, "shall apply to the city of Quincy." Chapter 5844, Acts of 1907, Section 1020 of the General Statutes of 1906, provides that "The city or town council shall have the power to prevent and abate nuisances."

By express specific provision of the charter act the municipality is authorized "to regulate the construction, location and arrangement of earth closets and privies" in the city; but there is no express authority to prohibit the use of earth closets in any part of the city. The express power given "to regulate the ......... location ........

of earth closets and privies," in the connection used, relates to the location of such closets as utilized on any property in the city, and the power to regulate the "location," considered in connection with the other provisions does not authorize a prohibition of the proper use of earth closets and privies in any part of the city. Power to regulate does not include power to prohibit. Mernaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 34; McQuillim Munic. Ordinances, Sec. 51; 2 Dillon Munic. Corp. (5th ed.) Sec. 665.

The provisions of the charter act authorizing the city to issue bonds for the purpose of constructing and maintaining waterworks and a "system of sewerage" &c., do not expressly or impliedly give the city power to prohibit the use of earth closets; and such provisions do not cause the general grants of power or the general welfare clauses, to enlarge or to extend the express limited powers given in definite restrictive terms "to regulate the construction, location and arrangement" and use of earth closets and privies in the municipality. The charter seems to contemplate the use of a sewer system and also of earth closets and privies, the power given to abate nuisances being broad enough to prevent the improper use of either utility.

The ordinance here complained of in substances forbids the use of earth closets upon property in the city that is situate not more than 200 feet from the "main sewer line or the water main" without reference to whether such closets are a nuisance. The enforcement of such an ordinance is not within the express or implied powers of the city; and as the city can exercise only such powers as are conferred upon it by statute, the ordinance is invalid because not authorized by law; and the judgment of the municipal court imposing a penalty for a violation of the

invalid ordinance is likewise invalid and may be annulled in certiorari.

The federal question decided in Hutchinson v. City of Valdosta, U. S., 33 Sup. Ct. Rep. 290, is not involved here.

The judgment is quashed.

SHACKLEFORD, C. J. AND TAYLOR, AND HOCKER, J. J., concur.

COCKRELL, J., (*dissenting*.)

Stripped to its last analysis the majority opinion holds that the specific power to regulate the location of earth closets by necessary inference destroys the power to prescribe a locality in which they may be used.

That earth closets in cities are tolerated at all only by reason of some necessity, financial or otherwise, and that they may be prohibited under the most ordinary general grant of power must be admitted. The correlative power to force sewer connection, but the positive form of the same power, is declared by the Supreme Court of the United States in the recent Valdosta case, cited in the majority opinion, to be "the commonest exercise of the police power" by a municipality.

It is true that in the charter granted in 1907, after conferring the specific power to regulate the location of these closets, the legislature gave detailed powers as to the enforcement of regulations looking to their comparative cleanliness and sanitation, and also provided that the municipality might issue bonds to enable it to put in water works and a sewerage system. The legislature knew that this would take time, and that the city would not in all probability be completely supplied with sewers

in many, many years, so provision looking to the immediate future was made, so that these necessary evils might be permitted when located beyond the sewer limits, and for this reason thought it sufficient to authorize the city to regulate the "location" of these closets.

I cannot believe that the Mernaugh case rightly read, forces us thus far, and if it does, then the sooner its binding authority be questioned by the court that rendered it, the better for the State.