W. F. MILLER, *Plaintiff in Error*, v. H. LESLIE QUIGG, CHIEF OF POLICE OF THE CITY OF MIAMI, FLORIDA, *Defendant in Error*.

Opinion Filed May 12, 1924.

This case was decided by Division A.

Under the provisions of its charter empowering it "to do all things whatsoever necessary or expedient for promoting or maintaining the general * * * health * * * of the city or its inhabitants," and "to provide for the preservation of the public health of the inhabitants of the city, make regulations to secure the same," an ordinance of the City of Miami defining a tent city as "any structure or enclosure, the roof of which is of silk, cotton, canvas or light material, and which is used by one or more people as a human habitation," and tent cities, as "any lot or site on which are located two or more tents," and providing that tents or tent cities which are located on a street in which there is a public sewer shall be provided with water closets connected with the public sewer; one for each sex in the ratio of one for each sex for each five tents, and one slop sink for each five tents or portions thereof; is a reasonable and valid exercise of the city's power to preserve and promote the public health.

A Writ of Error to the Circuit Court for Dade County; Mitchell D. Price, Judge.

Judgment affirmed.

*Twyman & Scott,* for Plaintiff in Error;

*J. W. Watson, Jr.,* for Defendant in Error.

BROWNE, J.—The only question involved here is the power of the City of Miami to require the owner, occupant,

or lessee, of any property within the corporate limits, upon which a tent city is located to comply with certain sanitary regulations.

Section 1 of the ordinance complained of, defines a tent city to mean "any structure, or inclosure, the roof of which is of silk, cotton, canvas or light material, and which is used by one or more people as a human habitation," and tent cities, to mean "any lot or site on which are located two or more tents."

Section 2 provides that "No tent or tent city shall be erected or maintained without a. permit from the Department of Public Welfare."

Section 3 is as follows: "Tents or tent cities which are located on a street in which there is a public sewer shall be provided with water closets as hereinafter provided, which must be connected with said public sewer. In such cases there shall be one water closet for each sex in the ratio of one for each sex for each five tents or portions thereof, and in addition thereto, one slop sink for each five tents or portions thereof. In case a tent or tent city shall be located on a street in which there is no public sewer, dry toilets, thoroughly water tight and fitted with a tight fitting self-closing cover so as to make the receptacle contained in such dry closet fly and vermin proof, and so ventilated that all odors shall be discharged therefrom to the outside of such toilet at a height of not less than twelve feet, shall be provided in the following ratio: One dry toilet for every two tents. No tent shall be located more than one hundred (100) feet from the water closet or dry toilet which serves such tent."

The petitioner was tried in the municipal court of Miami, upon an affidavit charging him with violating Sections 2 and 3 of the Ordinance "by maintaining a tent city in the City of Miami without a permit to do so, from

the Department of Public Welfare, and by failing and refusing to provide a water closet for each sex in ratio of one for each sex for each five tents and failure to provide slop sinks for each five tents.''

The petitioner was found guilty and sentenced to pay a fine of $100.00 or serve fifty days in jail. Failing to pay the fine, he was confined in the city jail, and sued out writ of *habeas corpus*. Upon hearing he was remanded to the custody of the sheriff, and the case is here on writ of error.

The plaintiff in error in his brief, says that ''he rested his case in the Court below, and rests his case here, squarely upon the proposition that the City of Miami had no authority to pass the ordinance in question.''

There seems to be ample authority in its charter, for the city to enact the ordinance.

Paragraph ''2'' of Section 3 empowers the city ''to do all things whatsoever necessary or expedient for promoting or maintaining the general * * * health * * * of the city or its inhabitants.''

Paragraph ''W'' of article 3 empowers the city, among other things, ''to provide for the preservation of the public health of the inhabitants of the city, make regulations to secure the same.''

During the winter or tourist season large numbers of persons flock to Florida, and fill our hotels, although many live in tents in localities known as tent cities, camping grounds, tourist camps, etc.

A large number of people living in proximity in tents without sanitary regulations, is very apt to produce sickness, and it is to promote and preserve the public health, that the ordinance was enacted.

The case of Malone v. City of Quincy, 66 Fla. 52, 62 South. Rep. 922, is not authority for the position taken by

the plaintiff in error. In that case the Court held that the provision of the charter that authorized the city "to regulate the construction, location and arrangment of earth closets and privies" did not give the city authority to prohibit the proper use of earth closets and privies in any part of the city. It was there held that the "Power to regulate does not include power to prohibit."

A mere casual reading of the case of Malone v. City of Quincy, *supra,* and the ordinance of the City of Miami, will show the distinction between what was held in that case, and what the Miami Ordinance seeks to accomplish.

The challenged ordinance is a reasonable and valid exercise of the city's power to preserve and promote the public health, and the judgment is affirmed.

TAYLOR, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.