W. A. HUNTER, as Chief of Police of the City of Live Oak, v. F. J. GREEN, on his relation to the State

194 So. 379
Division B
Opinion Filed February 27, 1940

*G. Warren Sanchez,* for Plaintiff in Error;

*R. C. Horne,* for Defendant in Error.

CHAPMAN, J.—The plaintiff in error, W. A. Hunter, as Chief of Police of the City of Live Oak, Florida, on the 12th day of August, 1938, by affidavit and wa'rrant charged F. J. Green with the violation of Sections 1 and 2 of amended Ordinance No. 308 of said city, viz.:

"(Section 1)  It shall be unlawful to conduct, operate or maintain any undertaking or embalming establishment, mortuary, funeral home or any place for the purpose of caring for and keeping dead bodies, for holding funerals or for practicing the profession of undertaking, embalmer or mortician, or funeral director in or on any part of the City of Live Oak, Florida, or in or on any part of the walks or ways or on or contiguous to any part of the avenues on the streets of the City of Live Oak, Florida, other than within that section of the City which starts at the North End of Texada Street where it intersects with Conner Street and runnning Westward on Conner Street to Church Street, thence Southward on Church Street to Wilber Street, thence Eastward on Wilber Street and alley and property to Dowling Street, thence Northward on Dowling Street to Howard Street, thence Eastward on Howard Street to Texada Street then'ce North on Texada to the point of origin.

"(Section 2)  It shall be unlawful to conduct, operate

or maintain any undertaking or embalming establishment, mortuary, funeral home, or any place for the purpose of caring for and keeping dead bodies, for holding funerals or for practicing the profession of undertaker, embalmer, or mortician, of funeral home or director in or on any part of the City of Live Oak, Florida, without first having obtained a written permit so to do from the City Council of the City of 'Live Oak, Florida, which permit may be granted by said City Council by resolution upon application therefor, upon showing to the satisfaction of the said City Council that the permitted occupation would not at the place and under the conditions in which it will be carried on be a nuisance or seriously impair the value of property in the vicinity or be against the public safety, convenience, welfare and without first having obtained and filed with the City Clerk, the consent in writing of persons, firms, or corporations who own Three-Fourths or more of the total feet frontage of lots on both sides of the block in which such person, firm or corporation desires to establish and carry on such business, together with the consent in writing of Three-fourths or more of the residents on both sides of the Streets and also the corners bounding all sides of the block in which such person, firm or corporation desires to establish and carry on such business."

On petition of F. J. Green a writ of habeas corpus was issued by the Honorable Hal W. Adams, Circuit Judge. A hearing was held in which the respective parties were heard by counsel, and the petitioner was discharged from custody on the grounds that the Ordinance was invalid and unenforceable because the City Council of the City of Live Oak was without the charter power to enact said Ordinance and that same was invalid for a number of other reasons. A writ of error was granted to the said judgment and an

appeal perfected to this Court and the case is here for review.

Section 8 of Article VIII of the Constitution of Florida gives the Legislature power to establish, and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. Section 6 of Article IV of Chapter 7192, Special Acts of 1915, Laws of Florida, grants to the City Council of Live Oak the "power by ordinance * * * to establish hospitals, jails, houses of detention and correction and to make regulations for government thereof; to pass ordinances and to make rules and regulations to secure the general health, morals, safety, and welfare of the city's inhabitants, and to prevent and remove nuisances, whether affecting the health, morals, safety or security of the community; * * * " Section 3 of Article XI of Chapter 7192, *supra*, provides * * * "and all laws now in force or that may hereafter be enacted for the government of cities and towns, except in so far as they conflict with the provisions of this Act, shall apply to the City of Live Oak and officers thereof; that this Act shall not be retroactive, nor shall it impair any contract, obligation or right for or against said city."

It appears that Chapter 7192, Special Acts of 1915, *supra*, adopted all laws then in force or that may thereafter be enacted for the government of cities and towns of Florida, and Section 2949 C. G. L. thereby became a part of the laws of said city and is now applicable to the City of Live Oak.

Section 2949 C. G. L. provides:

"Ordinances and Penalties.—The city or town council shall have power to pass all such ordinances and laws as may be expedient and necessary for the preservation of the

public peace and morals, for the suppression of riots and disorderly assemblies and for the order and government of the city or town, and to impose such pains, penalties and forfeitures as may be needed to carry the same into effect: Provided, that such ordinances shall not be inconsistent with the Constitution and laws of the United States or of this State: and Provided, further, that for no one offense made punishable by the ordinances and laws of said city or town shall a fine of more than $500.00 be assessed, nor imprisonment for a period of time greater than sixty days."

It is the contention of counsel for plaintiff in error that the City of Live Oak had and possessed ample charter power to enact Ordinance No. 308 and that same is a regulatory ordinance and well within the police power conferred on the city. It is difficult and practically impossible to give an exact definition of the police power. The expression "police power," in a broad sense, included all legislation and almost every function of civil government.

The police power is treated by 11 Am. Jur. par. 247, pages 972-3, thusly:

"Blackstone defines police power as 'the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious, and inoffensive in their respective stations.' Many cases employing the language of Chief Justice Shaw define it as 'the power vested in the legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of

the same.' Judge Cooley says that the police power of a state 'embraces its whole system of internal regulations, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others,' and the courts have quoted this definition with approval many times. Finally, it has been said that by means of this power the legislature exercises a supervision over matters involving the common welfare and enforces the observance, by each individual member of society, of the duties which he owes to others and to the community at large."

In the case of State *ex rel.* Shad v. Fowler, 90 Fla. 155, 105 So. 733, the relator owned a lot in the City of Jacksonville and requested of the city the issuance of a permit to construct and erect a two-story building there, the ground floor of which was to be used as stores for the retail sale of groceries, while the second floor thereof was to be made into apartments and used for residential purposes.

An ordinance of the City of Jacksonville made it unlawful to issue a permit to construct and erect a building within a certain described area or territory of the city defined and designated in the ordinance for any purpose other than that of a residence. The City of Jacksonville had express charter powers to make regulations to secure the general health of the inhabitants and to prevent and remove nuisances and to pass all ordinances necessary for the health, convenience and safety of the citizens.

This Court held the ordinance invalid on the ground

that the construction and erection of a building within the area defined in the ordinance was not a menace to health, neither was it a nuisance or an unsanitary object, and was an improper exercise of the general police power embraced in the charter and there was no express charter power authorizing the enactment of the ordinance.

In State ex rel. Helseth v. DuBose, 99 Fla. 812, 128 So. 4, the City of Vero Beach enacted a zoning ordinance for the purpose of regulating the location, construction, bulk, and height of buildings to be erected therein. Indian River County owned a lot located within the territory designated in the ordinance and desired to erect or construct a county jail thereon and made application to the city for a permit so to do and the same was by the City of Vero Beach denied.

This Court held the ordinance invalid because it restricted the use of private property which could be sustained under the police power and then only under specific legislative authority to enact the ordinance; and that the ordinance was an arbitrary exercise of power without reference to public health, morals, safety or welfare.

In the case of State *ex rel.* Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114, this Court sustained a zoning ordinance prohibiting the erection and construction of a building to be used for business purposes located within a residential district, and in so doing said:

"It cannot be questioned that the application of zoning ordinances frequently amounts to inroads on the ownership and use of private property that would have been condemned as arbitrary and unreasonable before the advent of our industrial era. Such applications present mixed questions of law and social economics and find their justification only in some aspect of the police power asserted fairly

and impartially in the interest of the public welfare, health, safety, and morals.

"When the police power has been asserted in this wise, the determination of public officials in the premises duly authorized will not be disturbed by the courts unless it clearly appears that their action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, morals, safety, or welfare."

In Euclid v. Ambler Realty Co., 272 U. S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303, the constitutionality of a zoning orlinance was before the court and upheld, but the Court declined to adopt a rule by which zoning ordinance cases would be decided and reserved the right to apply constitutional principles to cases as presented. It was said:

"In the realm of constitutional law, especially, this court has perceived the embarrassment which is likely to result from an attempt to formulate rules or decide questions beyond the necessities of the immediate issue. It has long preferred to follow the method of a gradual approach to the general by a systematically guarded application and extension of constitutional principles to particular cases as they arise, rather than by out of hand attempts to establish general rules to which future cases must be fitted. This process applies with peculiar force to the solution of questions arising under the due process clause of the Constitution as applied to the exercise of the flexible powers of police, with which we are here concerned."

In the case of City of Miami Beach v. The Texas Oil Co., opinion filed January 23, 1940, but not yet reported, involving the validity of a zoning ordinance enacted by the City of Miami Beach, this Court said:

"It is generally recognized that anything which is detri-

mental to health or which threatens danger to persons or property within the city may be retarded and dealt with by the municipal authorities as a nuisance. Under a general grant of power respecting nuisances the municipal corporation may declare a thing a nuisance which is one in fact, but without express charter power, the general rule is that the city cannot declare by ordinance that a nuisance which is not so in fact. To constitute a thing a legal nuisance, it must be so in fact, regardless of a declaration of an ordinance on the subject. See McQuillin on Municipal Corporations (2nd Ed.), Vol. 3, pages 125-6, par. 956."

We fully agree with counsel for defendant in error that the ordinance before the court cannot be sustained as a zoning ordinance because of the want of charter powers on the part of the City of Live Oak to enact the said ordinance.

We pass now to the question of the police power of the City of Live Oak under Chapter 7192, *supra,* to enact and enforce the ordinance as a regulatory measure. In the case of *Ex parte* Wise, 141 Fla. 222, 192 So. 872, we had before us the validity of an ordinance of the City of Sarasota, when it was said:

"This Court, speaking through Mr. Justice Ellis, in Pounds v. Darling, 75 Fla. 125, 77 So. 666-68 L. R. A. 1918E, 949, pointed out the prerequisites of a valid ordinance, and said '* * * To be valid an ordinance must be reasonable and not in conflict with any controlling provision or principle of law (Waller v. Osban, 60 Fla. 268, 52 So. 970) ; should it be within the powers expressly or impliedly conferred (Hardee v. Brown, 56 Fla. 377, 47 So. 834, *supra;* Malone v. City of Quincy, 66 Fla. 52, 62 So. 922, 1 Ann. Cas. 1916D, 208; Ferguson v. McDonald, 66 Fla. 494, 63 So. 915), and if any doubt exists as to the extent of a

power attempted to be exercised by a municipality out of the usual range, or which may effect the common-law right of a citizen, it is to be resolved against the municipality (Anderson v. Shackleford, 74 Fla. 36, 76 So. 343, L. R. A. 1918A, 139).'

"An ordinance when in force should not in its application deprive the owner of a reasonable use and enjoyment of his own property, thereby depriving him of his property without due process of law or just compensation. The ownership of property is guaranteed by the State and Federal Constitutions. Frequently it becomes necessary for the property and use thereof to yield to constitutional regulations. While a municipality by ordinance may regulate or limit the use of property in behalf of the general welfare of its citizens, such action is authorized only in a constitutional manner. See City of Palmetto v. Katsch, 86 Fla. 506, 98 So. 352; Liggett Co. v. Amos, 104 Fla. 609, 141 So. 153."

In the case of State *ex rel.* Skillman v. City of Miami, 101 Fla. 585, 134 So. 541, this court had before it Ordinance No. 950 adopted by the City of Miami regulating the location of funeral homes, embalming establishments and mortuaries within defined areas of the City of Miami. The ordinance was enacted under the police power of said city and restricted the use of real estate within the area set out in the ordinance. The ordinance was sustained as a regulation measure under the police power of the city and Mr. Justice BUFORD, speaking for the Court, said:

"The business sought to be conducted by the plaintiff in error is that of a mortuary or funeral home. Section 3 of Chapter 10847, Extraordinary Session of 1925, authorized the City of Miami, among other things, 'to regulate or prevent slaughter houses or other noisome or

offensive business within the City * * * to regulate or prohibit * * * the existence of any dangerous or unwholesome trade or employment therein; * * * and generally, to define, prohibit, abate, suppress and prevent all things detrimental to health, morals, comfort, safety, convenience and welfare of the inhabitants of the City.' Funeral homes, embalming establishments and mortuaries have long been held to be subject to regulation under police power, and this *before* the modern practice of zoning became recognized as an attribute of municipal power. * * *

The conducting of a funeral home in a particular locality may not be detrimental to the health, morals, safety or welfare of those surrounding and in close proximity to the establishment, but it is well within the province of the City Commission to determine that the location of such business will be detrimental to the comfort and convenience of those inhabitants of the city who immediately surround and are adjacent to the place where such business is conducted." (Emphasis supplied.)

In State ex rel. Stephens v. City of Jacksonville, 103 Fla. 177, 137 So. 149, a permit for the construction of a garage in connection with a funeral home within the City of Jacksonville was applied for. The City of Jacksonville adopted an ordinance regulating funeral homes, embalming establishments and mortuaries within areas of the City and to issue the permit violated said ordinance. The relator contended that the ordinance had not been lawfully enacted and on appeal here this Court so held. Mr. Justice BUFORD, speaking for the Court, said:

"Without the provisions of those two sections, it may be that the City of Jacksonville could have established zones in the exercise of its power to regulate funeral homes or mortuaries under its general *police* power as it is recognized by this and other courts that such power of regulation is

vested in municipalities to regulate such establishments. See State *ex rel.* Skillman v. City of Miami, *supra.*"

The rule adopted by this Court in State *ex rel.* Skillman v. City of Miami, *supra,* is in accord with the trend of authorities in this country. McQuillin on Municipal Corporations, Vol. 3 (2nd. Ed.), pages 154-6, part of par. 962, when discussing the validity of ordinances like the one involved here, said:

"To be valid and constitutional ordinances regulating trades, businesses, industries and manufactures of the several kinds so generally carried on in urban centers, directing their location, and excluding certain of them from specified districts, must emanate from sufficient grant of power and have a reasonable relation to the preservation of the public health, safety, morals and comfort of the inhabitants. Any kind of industry which is a menace, or likely to become such due to its location and surroundings, or the manner in which it is conducted, to the conservation of any of those things fairly within the scope of the legitimate exercise of the police power, which the government exists to preserve and promote, may be regulated. Where the conditions justify the distinction and classification, familiar examples as to restrictions of location are: Undertaking establishments, which may be restricted within prescribed limits, and forbidden on residential streets; the storage, cleaning and renovating uncured animal hair and its by-products; cemeteries, tanneries; public laundries and wash houses; lumber yards; brick yards; brick making and brick kilns; livery stables; stone quarries and stone crushers; junk stores and yards; deposits of powder, oil, combustible and explosives; stock yards; pig pens; operation of soap, glue, coal oil, vitriol and like factories; slaughter houses; dairies and cow stables; carpet-beating

establishments; junk shops, second-hand dealers; rag pickers; ice cutting; saloons; dancing schools; ice factories; vegetable and fruit stands; operation of factories; * * *"

The well reasoned case of City of St. Paul v. Kessler, 146 Minn. 124, 178 N. W. 171, supports the rule enunciated by McQuillin on Municipal Corporations, *supra*. See also Brown v. City of Los Angeles, 183 Cal. 783, 192 Pac. 716; Spencer-Sturla Co. v. City of Memphis, 115 Tenn. 70, 290 S. W. 608; *Ex parte* Ruppe, 80 Cal. App. 629, 252 Pac. 746; Meager v. Kessler, 147 Minn. 182, 179 N. W. 732; Building Com'r of Town of Brookline v. McManus, 263 Mass. 270, 160 N. E. 887; White v. Luquire Funeral Home, 221 Ala. 440, 129 So. 84; City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 Pac. 923; Osborne v. City of Shreveport, 143 La. 932, 79 So. 542; Saier v. Joy, 198 Mich. 295, 164 N. W. 507.

The business of undertaker may be a proper subject of municipal regulation, especially under the municipal police power. In the exercise of the power the location of undertaking establishments may be regulated. See 43 C. J. 439, par. 591; 20 R. C. L. 455, par. 70.

The case of City of Miami Beach v. The Texas Oil Co., opinion filed January 23, 1940, and not yet reported, challenged the validity of Ordinance No. 446 making it unlawful to keep or store inflammable petroleum products within 1,000 feet of any dwelling, building or storeroom. The Texas Company had a bulk plant within the area affected and kept large quantities of inflammable products stored therein. The bulk plant was constructed at a cost of approximately $400,000.00 and had been built several years prior to the adoption of Ordinance No. 446. The legal effect of this ordinance, if upheld, would destroy this business. The Texas Company filed in the Circuit Court a suit

in equity to permanently restrain the city from the enforcement thereof on the ground that the Ordinance was arbitrary, discriminatory, unreasonable, unconstitutional and void. Considerable evidence was taken on the issues made and this Court sustained the validity of the Ordinance, but on the facts established in the record, held the Ordinance inapplicable and unenforceable as to the bulk plant of the Texas Company. It was said by this Court:

"While constitutional guaranties cannot be transgressed, it is well settled law that the possession and enjoyment of all rights are subject to the police power * * * and persons and property are subject to restraints and burdens necessary to secure the comfort, health, welfare, safety and prosperity of the people. See 11 Am. Jur., page 1006, par. 267. It is a well settled rule that all property is held subject to the right of the State to regulate it under the police power in order to secure safety, public welfare, health, peace, public convenience and general prosperity. The rule is based upon the concept that all property is held on the implied condition or obligation that its use shall not be injurious to the equal rights of others to the use and benefits of their own property. The public interest is paramount to property rights. See 11 Am. Jur., page 1009, par. 268. The right of the State to regulate a business which may become unlawful is a continuing one, and a business which may become unlawful is a continuing one, and a business lawful today may, in the future, because of changed conditions, the growth of population, or other causes, become a menace to the safety and public welfare and the continuance thereof must yield to the public good 11 Am. Jur., page 1044, par. 284. The determination of what businesses are affected with a public interest is primarily for the Legislature, but is always open to judicial inquiry. 11 Am. Jur., page 1060, par. 294; Tyson & Bro.—

United Theatre Ticket Offices v. Banton, 273 U. S. 418, 71 L. Ed. 718, 47 Sup. Ct. 426, 58 A. 'L. R. 1236. The law requires that all police regulations must be reasonable under all circumstances. The validity of a police regulation, therefore depends on whether under all circumstances, the regulation is reasonable or arbitrary and whether it is reasonably designed to accomplish a purpose falling within the scope of the police regulation. See Mutual Loan Co. v. Martell, 222 U. S. 225, 56 L. Ed. 175, 32 Sup. Ct. 74, Ann. Cas. 1913B 529."

The ordinance here involved regulates and prescribed the location within the City of Live Oak of funeral homes, embalming establishments and mortuaries and this ordinance was enacted under the police power conferred by its charter and the general law applicable to municipalities in Florida. We fail to find in this record any testimony showing or tending to establish that the ordinance here called into question is arbitrary, unreasonable, unconstitutional, void or invalid, and we are required from the record here to determine the validity of the ordinance as a question of law. We hold that the ordinance is a regulatory measure and is clearly within the police power of the city to enact. In the absence of testimony as to the reasonableness or unreasonableness of the ordinance and the application thereof to the property of Mr. Green located within the area defined in the ordinance, we express no opinion, but this question can or may be decided when properly presented.

The judgment appealed from is reversed and the petitioner is remanded to the custody of the Chief of Police of the City of Live Oak to answer the charges preferred against him.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

Buford, J., concurs in opinion and judgment.

Justices Terrell and Thomas not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.