EDWARD EHINGER, as Building Inspector of the Town of PALM BEACH, and the TOWN OF PALM BEACH, a Municipal Corporation, v. STATE OF FLORIDA, *ex rel.* ALFRED GOTTESMAN.

2 So. (2nd) 357
En Banc
Opinion Filed May 20, 1941

*Charles Francis Coe, E. Harris Drew* and *Gedney, Johnston & Lilienthal,* for Plaintiffs in Error;

*Aronovitz & Goldstein* and *Kunkel & White,* for Defendant in Error.

CHAPMAN, J.—The record here discloses that Alfred Gottesman, on April 19, 1937, for and in the consideration of $40,000.00, acquired a fee simple title to Lots C. D. 3, 4 and 5 in Sunrise Avenue Addition to the Town of Palm Beach, Florida. During the year 1929, a zoning ordinance adopted by the Town of Palm Beach classified the property as Residence "A." The ordinance restricted the use of the property for buildings to be used as dwellings for the occupancy and use of one family, schools, public libraries, court house, fire houses, police stations and private nurseries or green houses.

The property is located on the south end of Ocean

Drive and has a footage thereon of approximately 165 feet, and on the North side of Sunrise Avenue a footage of approximately 268 feet. The assessed value of the property by the Town of Palm Beach is the sum of $50,000.00 and the ad valorem taxes annually due thereon is approximately $1,600.00. Property located on Sunrise Avenue, except the land, *supra,* and other land for approximately 500 feet to the West thereof, is zoned for unrestricted business purposes or zoned as Residence District "C," which permits the erection of apartment houses and hotels.

The Town of Palm Beach, in January, 1930, adopted a reclassification Ordinance No. 2 and by the terms thereof much of the property formerly classified as Residence District "A" was changed or reclassified as Residence District "C," which permitted the use of some of the property for hotels and apartment houses, and across the street to the south of the property here involved, the property had constructed thereon buildings used as a club house known as "Sun and Surf Club," which was used by its members and extensively by guests of the large hotels of the Town of Palm Beach. The original ordinance classified as Residence District "A" all the property on the south side of Sunrise Avenue from the Atlantic Ocean west to Palm Avenue, with a few exceptions.

Alfred Gottesman, when negotiating for the property contacted some of the councilmen of the Town of Palm Beach and pointed out that the property could not be used or profitably carried as a residential property as then classified, but that it could be owned and carried as a hotel or apartment site, and the officials admitted the public need of a hotel or an apartment on the particular site and that the zoning restrictions

would be removed and a permit issued to build a hotel. Accordingly plans were provided by an architect and the property purchased. After taking title the City Council declined to reclassify the property or to issue the permit.

On July 24, 1940, an alternative writ of mandamus issued out of the Circuit Court of Palm Beach County, directed to the officials of the Town of Palm Beach commanding the issuance of a permit to Alfred Gottesman to construct an apartment hotel on the lands, *supra,* or to show cause for refusing so to do. On September 10, 1940, a lengthy answer was filed to the alternative writ by the officials of the said town, and on the issues tendered the court heard testimony. At the conclusion thereof the court held that the plaintiff had established the material allegations of the alternative writ and had brought himself within the rule of this Court as enunciated in State *ex rel.* Helseth v. DuBose, 99 Fla. 812, 128 So. 4; State *ex rel.* Skillman v. City of Miami, 101 Fla. 585, 134 So. 541, and was therefore entitled to the relief sought. From this final judgment an appeal has been perfected to this Court.

In the record is the testimony of witnesses for the respective parties fixing the value of the locus as residential property for an apartment hotel. The testimony as to the value of the property when used for residential purposes is from $10,000.00 to around $200.00 per front foot, and when used as a hotel apartment site the value is much higher or within the broad range of from $75,000.00 to $100,000.00. The traffic conditions about the property and surrounding area are such that it cannot be used for residential purposes. Cabanas have been erected on the water

front and the noises, that come from the attendants of the Sun and Surf Club located to the south of the locus, coupled with the ad valorem tax of $1,600.00 per annum, and other business property surrounding the same, are some of the factors that induced the court below to hold that the plaintiff was being deprived of the constitutional enjoyment of his property.

The Town of Palm Beach is a community of home and residences and the officials had, after the expenditure of much time, labor and money, adopted a comprehensive zoning ordinance and thereby planned for the development of every possible feature of the Town for many future years. It is unnecessary for a decision of this case to discuss the many attractive details provided for by the comprehensive zoning ordinance of said town.

The case of *Ex Parte* Wise, 141 Fla. 222, 192 So. 872, involved a zoning ordinance of the City of Sarasota. F. L. Wise applied to the City for a permit to erect a combination dwelling, fruit packing house and display room on lots within the area affected by zoning ordinance. He first applied for an order rezoning the property so as to permit the erection of a combination house, but the application was withdrawn and the City of Sarasota issued a permit to build a residence of the same dimensions and description which had been previously refused, and after the completion of the building an application was made for a license to operate the business of packing and selling citrus fruit, but the license was refused. Near the building was a filling station, store, restaurant, dance hall, curio shop, two tourist camps, public school, and Ringling's Art School. The place of business is approximately two miles from the center of the City of

Sarasota, north on the Tamiami Trail. F. L. Wise was arrested under a warrant issued by the City of Sarasota charging the violation of the zoning ordinance. This Court sustained the constitutionality of the zoning ordinance, but held that in its application to the building of Wise the same was unreasonable, unenforceable and unconstitutional. The Court in part said:

"This Court, speaking through Mr. Justice ELLIS, in Pounds v. Darling, 75 Fla. 125, 77 So. 666, L. R. A. 1918E 949, pointed out the prerequisites of a valid ordinance, and said:

" '. . . To be valid an ordinance must be reasonable and not in conflict with any controlling provision or principle of law (Waller v. Osteen, 60 Fla. 268, 52 South. Rep. 970) should be within the powers expressly or impliedly conferred (Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; Malone v. City of Quincy, 66 Fla. 52, 62 South. Rep. 922; Ferguson v. McDonald, 66 Fla. 494, 63 South. Rep. 915), and if any doubt exists as to the extent of a power attempted to be exercised by a municipality out of the usual range, or which may affect the common-law right of a citizen, it is to be resolved against the municipality. Anderson v. Shackleford, 74 Fla. 36, 76 South. Rep. 343.'

"An ordinance when in force should not in its application deprive the owner of a reasonable use and enjoyment of his own property, thereby depriving him of his property without due process of law or just compensation. The ownership of property is guaranteed by the State and Federal Constitutions. Frequently it becomes necessary for the property and use thereof to yield to constitutional regulations. While a municipality or ordinance may regulate or limit the

use of property in behalf of the general welfare of its citizens, such action is authorized only in a constitutional manner. See City of Palmetto v. Katch, 86 Fla. 506, 98 So. 352, Liggett Co. v. Amos, 104 Fla. 609, 141 So. 153.

"The permit granted by the City to the petitioner authorized him to construct a building of wood ninety feet in length and twenty-five feet in width, ten feet high, with a metal roof, and the building had living quarters therein. The City refused a permit for the same building when referred to as a 'combination building,' but granted the permit for a 'residence.' The building is shown to be neatly constructed, well painted, and the grounds are terraced and planted with shrubbery. It is shown that the building cost some $8,000.00 or $9,000.00. The City refused to issue a license to petitioner to sell citrus fruits from this building, but it had full knowledge of the type of business that petitioner intended to operate when the building permit issued. It has not been shown on this record that the business operated by the petitioner was deleterious to the health, safety or welfare of the people. It was the recommendation and opinion of the Honorable W. T. Harrison that the ordinance in its application to the building of the petitioner was unreasonable and the testimony fully establishes this conclusion.

"It is well settled law that when a zoning ordinance in its application has the effect of completely depriving an owner of the beneficial use of his property, the ordinance should be altered or amended so as to prevent a confiscation of property without compensation. See State ex rel. Taylor v. City of Jacksonville, 101

Fla. 1241, 133 So. 114; State *ex rel.* Helseth v. DuBose, 99 Fla. 812, 128 So. 4."

The ordinance in its application to the property of the defendant in error restricted its use to residential purposes and required him to pay an ad valorem tax annually in the sum of $1,600.00 on an assessed valuation of $50,000.00. The area surrounding the locus was business property and it was clearly unusable for residential purposes. See Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406; Hunter v. Green, 142 Fla. 104, 194 So. 379; City of Miami Beach v. The Texas Co., 141 Fla. 616, 194 So. 368; Moon v. Smith, 138 Fla. 410, 189 So. 835; State *ex rel.* Townsend v. Farrey, 133 Fla. 15, 182 So. 448; Snedigar v. Keefer, 131 Fla. 191, 179 So. 421; City of Miami Beach v. State, 128 Fla. 750, 175 So. 537; State *ex rel.* Helseth v. DuBose, 99 Fla. 812, 128 So. 4.

We have read the briefs and examined the authorities cited and have heard able argument at the bar of this Court. The lower court held, and there is ample testimony in the record to sustain his conclusion, that the ordinance before us in its application to the property of defendant in error is arbitrary and in effect deprives him of property rights safeguarded and protected by the fundamental law, both State and Federal. Such an ordinance is in conflict with our republican traditions and on the judiciary rests the responsibility under our system in the behalf of our national perpetuity to decree such ordinances invalid immediately when the issues are properly presented.

We fail to find error in the record and accordingly the judgment apealed from is hereby affirmed.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD and THOMAS, J. J., concur.

ADAMS, J., dissents.