108 So.2d 50 (1958)
CITY OF MIAMI BEACH, a Florida municipal corporation, Appellant,
v.
GREATER MIAMI HEBREW ACADEMY, a corporation organized and existing under the laws of Florida, not for profit, Appellee.
No. 58-37.
District Court of Appeal of Florida. Third District.
December 23, 1958.
Rehearing Denied February 2, 1959.
*51 Joseph A. Wanick and Fred R. Baisden, Miami Beach, for appellant.
Sibley, Grusmark, Barkdull & King, Miami Beach, for appellee.
CARROLL, CHAS., Chief Judge.
This is an appeal by the City of Miami Beach, the defendant below, from an adverse decree rendered in the circuit court in Dade County. The decree enjoined the city from enforcing its zoning ordinance to prevent the plaintiff-appellee from having a private school on seven lots in a single family residence district, the zoning of which did not permit such a school.
The appellee, plaintiff below, desiring to build and operate a private school in the residential area involved, bought the seven lots. Appellee then applied to the city's Zoning Board of Adjustment and later to the City Council to change the zoning on those lots from single family residence RD classification (which did not permit schools), to multiple family residence RE (which classification expressly included public and private schools). The Zoning Board and the City Council denied such requests to rezone or spot zone the lots.
Appellant sued, seeking to be relieved of the single family residence zoning classification, and to enjoin the city from enforcing its zoning ordinance as to these lots. The grounds asserted in the complaint, in support of the contention that the city's action in denying the requested change was arbitrary and unreasonable, summarized were (1) that the lots were of little value for residence purposes, and were not usable for construction of single family residences, (2) that certain earlier zoning departures in the district (apartment house, synagogue, public school) compelled granting this later request, (3) that no other vacant property was available in this area of the city, and (4) that the requested change in zoning would be beneficial to the city's school system and to the public.
On trial of the case it appeared from the uncontroverted testimony of experts supplied by both sides that the lots involved were suitable, and readily salable and usable, for single family residences, and that such lots were scarce and in demand for that use. The evidence disclosed that the area lies on the east side of Biscayne Waterway, and is almost entirely built up with single family residences, as is the area facing it on the west side of the waterway. This area lies between 41st Street and 47th Street. As disclosed by an aerial photograph in evidence, 41st Street is an active business street, and is lined on both sides with commercial buildings. The residential area in question begins a block or block and one-half north of 41st Street. The more liberal uses extend from 41st Street through that strip of a block or block and one-half to the southern side of the residential area.
The aerial photograph shows that the public school to which reference is made in the record and in the decree fronts on 41st Street. It and its playgrounds were permitted by the city to encroach onto the second block north of 41st Street, into the southern edge of the residential district. A synagogue was built on the waterway in the first block from 41st Street, and at the southern edge of the residential area. Likewise an exception was made for certain apartment houses bordering the public school area. Northward of these structures lies the large area zoned for single family residences involved here. The lots in question are some distance further removed from 41st Street and are situated in the residential area. These lots were not available earlier for construction of residences because there had been maintained thereon an horticultural nursery, as a non-conforming use since the enactment of the zoning plan. The appellee purchased the lots after *52 their owner terminated their non-conforming use status.
The court granted a decree in favor of the plaintiff-appellee. The trial court did not find, nor would the evidence support a finding that the property was not readily usable and salable for the purpose for which it was zoned, or that the desired prohibited use of it as a private school would not cause loss and injury to other owners in the area. The court, however, granted the relief sought on other considerations  the need of the plaintiff and of the city to have a school located there; the absence of other vacant property in the residential area; and the presumed adverse effect on this residential area caused previously by the city having made exceptions for the public school, synagogue with its activities, and the apartments. The appeal by the city followed.[1]
While each such case must turn on its own facts, the case of Miami Beach United Lutheran Church of the Epiphany v. City of Miami Beach, Fla. 1955, 82 So.2d 880, 882, is controlling here on the point that the city council was not arbitrary or unreasonable in refusing to permit plaintiff to use the lots for a purpose prohibited in that area under the plan of zoning which the city had put into effect. This is so because there are no material differences in the factual background of the two cases. In the Lutheran Church case, the city refused to spot zone two lots to allow construction and operation of a church in an "RD" residential area. There, as here, the owners had great desire to obtain a spot zoning change to permit them to use the property in a manner prohibited by the zoning ordinance; in each instance it was contended that it would benefit the public, and not adversely affect the area. In each case, the owner urged scarcity of property as a reason why spot zoning should be allowed, but in both cases it was established that there was other property available for the desired purposes in other parts of the city in areas presently zoned to permit such uses.
In the Lutheran Church case, the trial court refused to spot zone the area, and the Supreme Court, affirming, held that the case did not present a situation which would justify a court's "interference with the power reposed in the city by the legislature." Further in that case, the Supreme Court held that the change in zoning which was sought, if granted, would be spot zoning, saying: "The result would be `spot-zoning,' described by an expert witness as `the worst thing that can happen to a city * * * in what is a high class residential area.'"[2]
So in this instance, questions of zoning policy, of benefit or detriment, of what is good or bad for the city and the public, are essentially matters within the realm of the legislative power of the city. Those and the other considerations with which the chancellor concerned himself necessarily were before the city council for *53 decision and were passed upon by the council, in the exercise of its legislative power, by determining that its zoning ordinance should be upheld, and that the integrity of the zoning in that area should be preserved for the benefit of those who had bought and built their homes in reliance on the RD zoning.
In this case, when plaintiff's evidence failed to prove its charge that the property was unsuited or not profitably usable for the single family residence purposes for which it was zoned, the plaintiff as a (new) owner was in no position to contend that the change was needed to prevent virtual confiscation of his property or a taking thereof without due process of law. Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642; cf. Ehinger v. State ex rel. Gottesman, 147 Fla. 129, 2 So.2d 357.
Therefore, in ordering, in effect, that these seven residential lots be spot zoned to allow them to be used in a manner prohibited by the city's zoning ordinance, the learned chancellor committed error by substituting his judgment for that of the city council. Forde v. City of Miami Beach, supra, 146 Fla. 676, 1 So.2d 642; City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493; City of Miami v. Hollis, Fla. 1955, 77 So.2d 834; Parking Facilities, Inc., v. City of Miami Beach, Fla. 1956, 88 So.2d 141; Town of Surfside v. Abelson, Fla. App. 1958, 106 So.2d 108; McQuillin, Municipal Corporations, 3 Ed.Rev., § 25.278; Yokley, Zoning Law and Practice, 2 Ed., § 187.
The decree can not be justified as providing for a variance, based on hardship. Not only was there no showing of hardship, but as plaintiff purchased the land in face of existing zoning restrictions, any claimed hardship would be unactionable because self-imposed. Josephson v. Autrey, Fla. 1957, 96 So.2d 784; Green v. City of Miami, Fla.App. 1958, 107 So.2d 390, and see McQuillin, Municipal Corporations, 3 Ed.Rev., §§ 25.160 and 25.316.
Accordingly, for the reasons stated the decree appealed from is reversed, and the cause is remanded with directions to dismiss the complaint.
Reversed.
HORTON and PEARSON, JJ., concur.
NOTES
[1] The appellant City of Miami Beach, in its brief stated one question, as follows: "May a private school with full knowledge that the city's zoning ordinance prohibits schools in a single family residential district nevertheless in spite of the zoning ordinance and in the face of vigorous objections of affected homeowners proceeds to purchase land in a high-class established single family residential district for the purpose of erecting its school therein, and when the city refuses to permit the construction thereof, come into court and obtain an injunction against the city from interfering therewith, on the theory that the city needs the school, even though the uncontradicted evidence shows that the parcel of land is highly desirable for single family residential use; that the value of the homes in the entire neighborhood will be greatly depreciated by the construction of the school therein; and that there are numerous parcels of land available in the city suitably zoned for school use?"
[2] As to the disfavor with which such spot zoning is regarded, see Parking Facilities, Inc., v. City of Miami Beach, Fla. 1956, 88 So.2d 141; Yokley, Zoning Law and Practice, 2 ed., § 90, et seq.