TOWN OF LAKE MAITLAND, a Municipal Corporation, *Plaintiff in Error*, vs. GEORGE F. CARLETON, *Defendant in Error*.

137 So. 707.

En Banc.

Opinion filed November 16, 1931.

*H. F. Mohr* and *W. M. Madison*, for Plaintiff in Error; *Allison E. Palmer*, for Defendant in Error.

BUFORD, C.J.—This was a statutory action under the provisions of section 1916 R. G. S., 3049 C. G. L., to exclude certain lands from the corporate limits of the Town of Lake Maitland.

Under the provisions of this section it is incumbent upon the petitioners to show that the incorporated town contains less than One Hundred Fifty (150) qualified electors before the Circuit Court acquires jurisdiction to proceed further and to enter judgment in the premises.

It is contended here that the appellant did not meet this burden of proof.

The petition was filed on January 30, 1931. The record shows that the next preceding election held in the Town of Lake Maitland was held on March 1, 1930. There is no showing in the record that an election would be held in the Town of Lake Maitland within four weeks after the petition was filed.

The only question which we are required to determine here is whether or not the petitioner in the court below made the necessary proof as to the number of qualified electors within the Town of Lake Maitland to give the Circuit Court jurisdiction to determine whether or not the lands involved should be excluded.

A duly authenticated list of the registered voters held to be qualified to vote at the last general election held on March 1, 1930, prior to the filing of the petition was offered in evidence by the Town and was not admitted. The Clerk of the Town testifying, after refreshing his memory from this list, testified that there were names of Seventy-seven (77) persons on the list who were exempt from the payment of poll tax and that there were thirty-nine (39) of those on the list and not exempt who had paid the poll tax between November 1, 1930, and January 30, 1931, and that one of those exempt had died. This apparently led to the conclusion that there were only One Hundred and Fifteen (115) qualified electors in the Town at the time of the filing of the petition. This conclusion was not warranted. The list shows One Hundred and Sixty-six (166) names of qualified electors on March 1, 1930, and the evidence shows affirmatively that list decreased by only one.

We must read the Constitution and the statute authorized by the Constitution together to determine what is a qualified elector. Section 1 of Article VI fixes the general qualification of qualified electors. Section 2 of Article VI authorizes the legislature to provide for the registration of all electors. Section 8 authorizes the legislature to make the payment of capitation tax a prerequisite for voting.

Section 1836 R. G. S., 2946 C. G. L., fixes the qualification of electors of municipal corporations, where not otherwise fixed, by special statute. This section, amongst other things, provides, referring to persons qualified, "and shall have paid his poll taxes as provided by law and as prescribed for state elections."

Section 708 R. G. S., 910 C. G. L., authorizes the assessment of poll tax and requires the same to be collected when taxes on property are collected. Under this section of the statute poll tax for 1930 did not become delinquent before April 1, 1930.

Section 215 R. G. S., as amended by Chapter 8583 Acts of 1921, 228 C. G. L., makes the payment of poll tax on or before the fourth Saturday preceding the day of election for the two years next preceding the year in which such election is held a prerequisite to the qualification of an elector against whom the poll tax is lawfully assessable. Thus, the payment of the tax is required if assessable and it is immaterial whether the same is actually assessed or not.

So it is that the payment of capitation or poll tax in the manner or within the time prescribed by law is prerequisite to being a qualified municipal elector. The petitioner here failed to show affirmatively that any of those persons who were qualified electors at the time of the municipal election on March 1, 1930, and against whom a poll tax was lawfully assessable had prior to the date of the filing of the petition become disqualified by reason of the non-payment of poll tax at the time when the same was required to be paid.

Unless an election should interevene such electors would not have become disqualified on account of the non-payment of poll tax until the 1st day of April, 1931, when the same became delinquent. If an election did intervene such electors would become disqualified by reason of the non-payment of poll tax if the same was not paid on or before the fourth Saturday preceding the date of the election. There-

fore, it is apparent that the petitioner did not meet the burden of showing that there were less than One Hundred and Fifty (150) qualified electors in the Town of Lake Maitland at the time the petition was filed.

It is not necessary for us to determine whether or not the list proffered in evidence was a document entitled to be admitted in evidence.

The decree should be reversed with directions for further proceedings not inconsistent with the views here expressed. It is so ordered.

Reversed.

WHITFIELD AND TERRELL, J.J., concur.

ELLIS AND BROWN, J.J., concur in the conclusion.

DAVIS, J., concurs specially.

DAVIS, J. (Concurring):—I concur in the reversal but not in the holding of the opinion that payment of poll taxes has any bearing on the question of who are qualified electors within the purview of Section 3049 C. G. L., 1916 R. G. S.

That section provides for the exclusion of properties from a municipal corporation "containing less than one hundred and fifty qualified electors" upon certain conditions. Such a statute must be construed in the light of what was intended to be accomplished by way of legislation with regard to the subject dealt with in the legislative act. What is a qualified elector under one statute may be not a qualified elector under another. In cases like this we must determine the legislative intent and we are not bound by definitions found in other statutes which have no relation to one like the present.

One of the accepted ways of construing a statute is to determine the practical operation and effect of the divers constructions we are urged to adopt. If one of them appears to be grossly unreasonable, or leads to a *reductio ad absurdam* when followed to its logical conclusion, we not only may, but should, disregard it, however apparently logical

on its face it may otherwise seem. Some of the most fallacious and specious propositions conceived and urged before the courts, ofttimes appear the most convincing when first heard, but dissolve and disappear into unsubstantial shadows when subjected to the test of practical application which demonstrates their unsoundness.

Turning now to the present controversy before the Court, it is contended that a qualified elector *within the purview of Section 3049 C. G. L., 1916 R. G. S.* (which is all that we are here called on to determine) is to be measured by section 2946 C. G. L., 1836 R. G. S. which defines a qualified elector as one otherwise qualified to vote and ''who shall have paid his poll taxes as provided by law and as prescribed for state elections''.

Making a practical application of this rule to a controversy arising under section 3049 C. G. L., 1916 R. G. S. supra, we may easily have periods of time during the year when cities like Tampa, Jacksonville and Miami, the largest in the state, would at a particular day have less than one hundred and fifty *qualified electors* (that is, those who had paid their poll taxes) and thereby bring such cities within the purview of the law which authorizes the exclusion of territory in small municipalities, under certain conditions. Surely, it is obvious that such was not the legislative *intent*, and if it was not, then something that the legislature did not intend should obtain, should not be brought about by judicially construing section 3049 C. G. L., R. G. S. 1916 supra, as being controlled by definitions found in any other laws.

It seems that the legislative intent was to have section 3049 C. G. L., 1916 R. G. S. supra, apply only to those communities having within their inhabitants less than one hundred and fifty citizens having the qualifications to vote under the laws and ordinances of the city registered as such and that payment or non payment of poll taxes was never contemplated as having the power to fluctuate cities

in and out of the terms of this statute from time to time during the year.

ELLIS AND BROWN, J.J., concur.