ROBERT R. TAYLOR, as County Solicitor Prosecuting for the State of Florida in the County of Dade, Appellant, v. TRIANON AMUSEMENT Co., et al., Appellee.

200 So. 912
En Banc
Opinion Filed March 11, 1941

Robert R. Taylor and Thomas H. Anderson, for Appellant;

448

*Edward L. Semple,* for Appellees.

PER CURIAM.—The record discloses that Kenneth W. Chisholm and the Trianon Amusement Co., a corporation, owned and operated a night club located on the Tamiami Trail at 8th Street and 61st Avenue Southwest, in the City of Miami, but situated outside of the city limits. While the Tamiami Trail runs east and west and is generally recognized and shown to be business property at this point, on the north and south thereof are homes and residences and the area is moderately settled as established by the many witnesses appearing in the lower court and giving the locations of their respective homes.

The Trianon Amusement Co. opened for business around 8:30 P. M., and operated until 3:00 A. M., and in some instances the performances continued as late as 4:00 or 4:30 A. M. Some of the witnesses placed the average time of closing around 3:00 A. M. The programs of the Amusement Co. generally consisted of dancing and incidental thereto was music by bands and orchestras. Whiskies, wines and beers were obtainable and some forms of gambling existed. Loud speakers or microphones were used to announce the several events of the evening. The music employed was of a loud type and in some instances given through the loud speakers or microphones. The noises were so intense, voluminous and continuous that rest and sleep of many of the residents of that area could not be had or obtained until the night club closed and the crowds dispersed. These noises disturbed the sleep and rest of some residing one and one-half miles from the night club.

The testimony disclosed that the lawn of a home owner located in close proximity to the night club was used as a "toilet" by some of the persons attending the club. Incidental to the excessive use of intoxicants was profanity to which the community was subjected. One witness stated,

that "the shrill voice of an intoxicated woman was similar to brawls in former days heard in a red light district." "They screamed like a bunch of wildcats," said another. The people clapped their hands and "applauded." The loud speaker would blare out, "This dance is on the house"; "Miss So and So will sing 'Alice Blue Gown'; "Mr. So and So will sing 'Oh, Johnny, Oh' and 'I'll Never Smile Again.'"

The residents of the area were required to listen to cursing, swearing, whooping, yelling, shouting, obscene language, stamping of feet, the noise of car horns and motors, loud music and announcements over the microphone, the result of "jitterbug dance contests." This noise is continuous from 8:30 P. M. to 3:00, 4:00 and 4:30 A. M. at the corner of 8th Street and 61st Avenue, and "is enough to run anybody crazy" and "my children cannot sleep," one woman testified.

Another witness testified in part: "On Saturday nights they come by our place and stagger, and just, oh, about a week ago, somebody, two or three fellows were drunk and another machine picked them up, and later on a couple of girls came by there just talking loud and carrying on something terrible. The announcement of the beginning of the evening program was over the radio and viz.: "Good evening everybody, this is Ken Chisholm speaking from the Trianon on the Trail at 61st Avenue, where the sky is the cloak and the stars are the light." One witness stated he could hear the noise nearly to Flagler Street, while others testified as to living in the community and not being affected by the boistrous noises.

The Amusement Company admits the existence of noises each night in the week and the conflict is the degree or extent of the noise. An effort had been made not only to reduce the volume of the noise, but to close the business

around 2:30 A. M. The health of many of the residents in that area was affected because of the loss of sleep, traceable to the noise at the night club. One witness testified that the value of his property had been deleteriously affected by the operation of this night club.

The Honorabale Robert R. Taylor, County Solicitor of Dade County, Florida, filed in the Criminal Court of Record of said county an information charging a nuisance against those operating the said night club, when the Trianon Amusement Company and Kenneth W. Chisholm brought a suit in chancery to enjoin the criminal prosecution of the said defendants for the maintenance thereof. The suit was brought against Robert R. Taylor, as county solicitor prosecuting for the State of Florida, in the County of Dade. The lower court, without notice, issued a restraining order against the county solicitor.

In an answer the county solicitor admitted many of the allegations of the bill of complaint and alleged that the place operated by the plaintiffs below was conducted in such a manner as to disturb the residents of that locality and that it was operated at unreasonable hours and the people therein were deprived of sleep and rest and were unduly and unreasonably disturbed. The answer prayed that the plaintiffs below be restrained from conducting their business in such a way as to unlawfully interfere with the rights of the residents in the area where said amusement company operated.

Considerable testimony was offered by the county solicitor to sustain the prayer of his answer and the evidence appearing in the record has by this Court been carefully considered. It cannot be seriously contended by counsel that the noise emanating from the night club at unreasonable hours disturbs the rest, quiet and sleep of the residents sur-

rounding the night club and over a large area. The testimony further shows that some of the criminal laws of Florida are being violated by individuals attending the performances of the night club. The county solicitor had filed criminal proceedings and was trying to enforce the criminal laws when a restraining order by the lower court was entered against the county solicitor. It is shown that the Trianon Amusement Co., Kenneth W. Chisholm, and other, had invested in this night club the sum of approximately $25,000.00 and the operation thereof was not showing a profit to the owners. The lower court, after hearing all the testimony, entered a final decree making permanent the temporary restraining order previously entered. The county solicitor at the final hearing in the lower court contended that the evidence adduced shows that the Trianon Amusement Co. and Mr. Chisholm were maintaining a nuisance at 8th Street and 61st Avenue Southwest in Miami, and its continued operation should be enjoined. We think the testimony fully sustained the contention of the county solicitor and that the permanent injunction restraining a constitutional officer from the performance of his constitutional duties was clearly erroneous.

It cannot be denied that property rights are protected by the fundamental law but the courts in the protection of these constitutional rights of property have never held that the use thereof cannot be regulated under the police power. The use of the property by the plaintiffs, as shown by the record, caused a violation of our criminal laws and under the decree the county solicitor was restrained from proceeding criminally against those violating the criminal laws of Florida. We think this theory of protecting property rights is not supported by the law.

In the case of City of Miami Beach, *et al.,* v. The Texas

Co., 141 Fla. 616, 194 So. 368, when considering this particular point said:

"While constitutional guaranties cannot be transgressed, it is well settled law the possession and enjoyment of all rights are subject to the police power . . . and persons and property are subject to restraints and burdens necessary to secure the comfort, health, welfare, safety and prosperity of the people. See 11 Am. Jur., page 1006, par. 267. It is a well settled rule that all property is held subject to the right of the State to regulate it under the police power in order to secure safety, public welfare, health, peace, public convenience and general prosperity. The rule is based upon the concept that all property is held on the implied condition or obligation that its use shall not be injurious to the equal rights of others to the use and benefits of their own property. The public interest is paramount to property rights. See 11 Am. Jur., page 1009, par. 268. The right of the State to regulate a business which may become unlawful is a continuing one, and a business lawful today may in the future, because of changed conditions, the growth of population, or other causes, become a menace to the safety and public welfare and the continuance thereof must yield to the public good. 11 Am. Jur., page 1044, par. 284. The determination of what businesses are affected with a public interest is primarily for the Legislature, but is always open to judicial inquiry. 11 Am. Jur., page 1060, par. 294; Tyson & Bro. United Theatre Ticket Offices, v. Banton, 273 U. S. 418, 71 L. Ed. 718, 47 Sup. Ct. 426, 58 A. L. R. 1236. The law requires that all police regulations must be reasonable under all circumstances. The validity of a police regulation therefore depends on whether, under all circumstances, the regulation is reasonable or arbitrary and whether it is reasonably designed to accomplish a purpose

falling within the scope of the police regulations. See Mutual Loan Co. v. Martell, 222 U. S. 225, 56 L. Ed. 175, 32 Sup. Ct., 74, Ann. Cas. 1913B 529."

See Knowles v. Central Allapattah Properties, Inc., 145 Fla. 123, 198 So. 819; Mayflower Holding Co. v. Warrick, 143 Fla. 125, 196 So. 428; Hunter v. Green, 142 Fla. 104, 194 So. 379.

The question for decision presented on this record is: Can a court of equity under the law enjoin or restrain a county solicitor from maintaining a criminal prosecution against the operation of an open air dance hall when it is shown that the maintenance and operation thereof is a nuisance? The office of county solicitor is created by Section 27 of Article 5 of the Constitution of Florida. His term of office is fixed at four years and his compensation and duties are prescribed by law. The evidence appearing in the record discloses that the place maintained at 8th Street and 61st Avenue Southwest by the Trianon Amusement Co. and Chisholm was in direct violation of Sections 7817 and 7832 C. G. L. It was the official duty of the county solicitor to not only inform against but to vigorously prosecute all those violating the provisions of Section 7817 and 7832 C. G. L., and other criminal violations prescribed by statute.

Counsel for appellees contend that the lower court, because of the particular facts involved, was legally authorized to issue a permanent injunction restraining the county solicitor from presecuting the Trianon Amusement Co. and Kenneth W. Chisholm from the maintenance of the alleged nuisance and thereby preventing a considerable loss to their property and preventing a multiplicity of suits because of the repeated prosecutions and for this reason an exception existed as a matter of law in behalf of the appellees to the effect equity will not restrain a criminal prosecution and

on this theory the decree appealed from should be affirmed. The case of Town of Orange City v. Thayer, 45 Fla. 520, 34 So. 573, is cited to sustain the exception to the rule, *supra;* likewise Zweigart v. Chesapeake & O. R. Co., 161 Ky. 463, 170 S. W. 1194; Royal Baking Powder Co. v. Emerson, 270 Fed. 429; Boynton v. Ellis, 57 Fed. (2nd) 665; Georgia Railroad & Banking Co. v. City of Atlanta, 118 Ga. 486, 45 S. E. 256; Kit v. Wood, 18 Tex. Civ. App. 683, 43 S. W. 1068; Biddles v. Enright, 239 N. Y. 354, 146 N. E. 625; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570. Careful consideration has been given to each of the cited authorities. It is our conclusion that the rule sustained by these cases is inapplicable to the facts shown by the record. The record shows occurring at the place, is gambling, the use of obscene language, profanity, the opportunity of minors to obtain intoxicating liquors, drunkenness and a continued noise injurious to the health of the citizens of the community, and these things are prohibited by statute and declared by statute to be a nuisance.

This Court, in the case of the Merry-Go-Round, Inc., v. State *ex rel.* Jones, 136 Fla. 278, 186 So. 538, had before it the identical question as here presented, except the parties; the suit was brought in the name of a private citizen and against the county solicitor prosecuting in the name of the State of Florida for the purpose of restraining the operation of a certain place known as the Merry-Go-Round on the ground that it was used for the purpose of gambling and constituted a nuisance. This Court held that such a suit could be maintained in the name of a private citizen. We held that the suppression of a nuisance was vastly different from a prosecution criminally of those who committed felonious acts contributory thereto. It appears that the law

on this point is well settled. This Court employed the following language (text pages 280-2 in 136 Fla.):

"Suppressing the place constituting a nuisance is a very *different* matter from prosecuting criminally those who commit felonious acts contributory to it, but the fact that the nuisance is abated by bill in equity is *no* bar to prosecution of those guilty of a felony contributing to it. This question was conclusively settled in the well considered opinion in Pompano Horse Club v. State, *supra* (93 Fla. 415, 111 So. 801), and while the questions raised here were not directly presented in that case, they were indirectly involved and were by inference settled by it.

In both the majority and the minority opinion in the last cited case, it was in terms announced that a bill in equity to suppress a nuisance was not a bar to prosecution for illegal acts appertaining to the nuisance. In an exhaustive note beginning on page 147, Vol. V, A. L. R., it is pointed out that this rule prevails in every State in the Union except perhaps New Jersey. The scope of the power of courts of equity to suppress nuisances both inherently and when conferred by statute is discussed at length in the note just cited. Unless conferred by statute, the exercise of that power has often been limited to cases in interference with property rights. *Ex parte* Edward F. Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Td. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

It would be a sad commentary on our system of jurisprudence to now hold that nuisances affecting the health, morals, welfare and manners of a community could not be suppressed at the instance of a private citizen when that very thing has been done under the common law for more than three hundred years and is approved by practically every State in the Union. The State is a party to such proceedings, and they are recognized as being employed for a very

wholesome purpose. They are conducted under different procedure from a criminal prosecution, are directed to the place rather than the perpetrator of the. act,. and are not conclusive as to individual guilt.

This holding does not do violence to the well settled equitable principle that injunction will not lie to enjoin a criminal prosecution; neither will this Court's writ granted under Section 5 of Article V, of the Constitution be employed for that purpose. Such prosecutions have reference to those under the penal laws of the State and may include felonious acts auxiliary to a public nuisance." (Emphasis supplied.)

If the rule enunciated (The Merry-Go-Round, Inc.; v. State *ex rel.* Jones, *supra,*) therein had been followed and applied to the evidence adduced, a different conclusion would have been reached. We hold that the chancellor below, as shown by his conclusions expressed in the final decree assigned as error, misconstrued the law applicable to the facts and for this reason it becomes necessary to reverse the said decree. See Smith v. McEwen, 119 Fla. 588, 161 So. 68; Town of Lake Maitland v. Carleton, 103 Fla. 583, 137 So. 707; Schmitt v. Bethea, 78 Fla. 304, 82 So. 817.

There is no testimony in the record sufficient to sustain the decree permanently restraining the county solicitor from discharging his statutory and constitutional duties in the prosecution of criminal cases falling within the jurisdiction of the Criminal Court of Record. The operation and maintenance of the night.club on the part of the plaintiffs below is clearly shown to be in contravention of the statutes of Florida.

The decree appealed from is hereby reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

WHITFIELD, TERRELL, BUFORD, CHAPMAN and ADAMS, J. J., concur.

BROWN, C. J., and THOMAS, J., dissents.

THOMAS, J. (dissenting).—I cannot agree with the opinion of a majority of the court because of the view that the question was not properly presented in the circuit court, no attack having sought appropriate relief in the same suit.

BROWN, J., concurs.